In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1354

LORI DAVID,

*Plaintiff-Appellee,*

v.

CATERPILLAR, INCORPORATED,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 98 C 1250—**Michael M. Mihm**, *Judge.*

ARGUED SEPTEMBER 20, 2002—DECIDED MARCH 17, 2003

Before EASTERBROOK, RIPPLE and KANNE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Lori David filed this action against Caterpillar, Inc. ("Caterpillar"); she claimed that Caterpillar had violated Title VII by discriminating and/or retaliating against her when it denied her promotions to five different positions while she was employed in its security department. A jury returned a verdict for Caterpillar on four of Ms. David's claims, but found that Caterpillar had retaliated against Ms. David by selecting another candidate, Joni Lusher, to fill a sergeant position. The jury awarded Ms. David $100,000 in compensatory damages and $750,000 in punitive damages. Following the

verdict, Caterpillar renewed its motion for judgment as a matter of law or, alternatively, for a new trial. The district court granted Caterpillar's motion in part with respect to the damages award and denied the motion in all other respects. The district court reduced the compensatory award to $50,000 and the punitive award to $150,000. The district court also awarded Ms. David $35,606.71 in back pay and $20,697.81 in prejudgment interest. Caterpillar appeals both the liability and damages determinations. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. Facts

Caterpillar hired Ms. David on March 6, 1989, as a fire and security officer at its East Peoria, Illinois facility. Ms. David continued to work in the security department until June 1996, when she transferred to Caterpillar's marketing department. As of 1994, no woman had ever been promoted in Caterpillar's security department. Ms. David repeatedly had expressed interest to her supervisor, Sergeant Gary Shilling, in being promoted to the rank of sergeant. Sergeant Shilling responded by telling Ms. David that no woman would ever be promoted in the department.

It was the sergeants' duty to evaluate officers and to make recommendations to the captains for promotions. In turn, the captains would recommend certain candidates to Tom Ruxlow, the corporate security manager, and to Larry Beckner, the assistant security manager. Although the captains played a significant role in the selection process, Ruxlow and Beckner made the final decisions

with respect to promotions. It is undisputed that Sergeant Shilling did not recommend Ms. David for promotion despite her excellent performance reviews.

On October 19, 1994, Ms. David and Kenny Hendrick, her union steward, met with Ray Richardson, captain of security at the East Peoria facility. Ms. David complained to Captain Richardson about only males being promoted in the security department. Captain Richardson told her that, in order to be promoted, she needed to have a four-year college degree; Ms. David responded that men who did not have degrees were being promoted. At this point, Richardson hit his desk and stated: "If it's a lawsuit you want, I don't want no part of it." R.120 at 371.

In November 1994, Ms. David filed charges with the EEOC. She alleged that she had been denied promotions due to sex discrimination. Both Captain Richardson and Sergeant Shilling were informed of Ms. David's charges. After Ms. David complained internally about discrimination and filed her EEOC charges, Richardson and Shilling began to treat Ms. David differently. Ms. David testified that they would go out of their way to avoid speaking to her and, when they did speak, that the encounters were "angry" in tone. *Id.* at 379. Additionally, Ms. David testified that Richardson and Shilling attempted to deny her an educational leave of absence and avoided completing paperwork that would have allowed her the opportunity to apply for a promotional opportunity outside of the security department.

In June of 1995, a sergeant position became available in the East Peoria security department. The position was not posted. In a meeting with all the captains and Beckner, Captain Richardson recommended that Joni Lusher, a woman, be promoted. Caterpillar had hired Lusher in September 1991. Lusher had not requested or shown any

interest in being promoted until Tony Kegley, her sergeant, and Captain Richardson approached her and specifically asked her if she was interested in a promotion. Ms. David was not asked if she was interested in the promotion, nor was she recommended for the position. Upon her promotion, effective July 3, 1995, Lusher was the first woman promoted in the security department. Ms. David believed that she was denied the promotion given to Lusher because Ms. David had made a complaint of sex discrimination.

Shortly after Lusher's promotion, Ron Dieckow, another security officer, spoke with Larry Mitzelfelt, the captain of security for the Mossville facility. Mitzelfelt learned of Lusher's promotion in a captains' meeting in which Beckner and Richardson were present. According to Dieckow, he asked Mitzelfelt why Lusher received the promotion, and Mitzelfelt replied that "he had been told by upper management that the next promotion in the department would have to be a woman in response to a lawsuit that was recently filed in East Peoria by another female security officer." *Id.* at 266. In a later conversation, Mitzelfelt told Dieckow "that they had looked at every female employee in [the] department as a candidate for sergeant" and "even considered his secretary, Sandy Daniels, as a possible candidate for a sergeant's job." *Id.* at 267.

## B. District Court Proceedings

A jury found that Caterpillar had selected Lusher in retaliation against Ms. David, and awarded Ms. David $100,000 in compensatory damages and $750,000 in punitive damages. Following the jury's verdict, Caterpillar made a renewed motion for a directed verdict or, alter-

natively, for a new trial. The district court granted Caterpillar's motion, in part, by reducing the compensatory award to $50,000 and the punitive award to $150,000. However, the district court denied Caterpillar's motion in all other respects.

First, the district court concluded that the exclusion of Dieckow's testimony was not required under Rule 37 of the Federal Rules of Civil Procedure as a sanction for Ms. David's failure to timely disclose the substance of Dieckow's testimony. Specifically, the district court determined that Caterpillar was not prejudiced by any discovery violation because it had introduced evidence that directly rebutted Dieckow's testimony when it called Mitzelfelt to testify that he had no such conversation with Dieckow. The district court also noted that there was no showing that Ms. David's counsel had acted in bad faith. Second, the district court concluded that, even assuming that the admission of Dieckow's testimony was improper, Caterpillar would not be entitled to judgment as a matter of law because the jury's verdict was supported by legally sufficient evidence. In particular, the district court pointed to (1) substantial testimony concerning the respective qualifications and experience of both Ms. David and Lusher; (2) Ms. David's testimony that she was treated differently by her superiors after complaining about discrimination; and (3) Rebecca Smith's testimony that she had been discharged from the security department after complaining about sexual harassment.

The district court also awarded Ms. David back pay from July 3, 1995, the date the jury found that she should have been promoted to security sergeant, through the end of May 1996, when she transferred to Caterpillar's marketing department, in the amount of $35,426.71, which represents the difference between what Ms. David earned

during this period and what was earned by Lusher, the person who received the promotion.

# II

# DISCUSSION

## A. Discovery Violation

Caterpillar asserts that the district court erred in permitting Dieckow to testify at trial because Ms. David had failed to supplement her Rule 26(a)(1) disclosures to identify Dieckow as having evidence supportive of her claims. Caterpillar claims that Ms. David's violation of Rule 26 was severely prejudicial.

Rule 26 of the Federal Rules of Civil Procedure requires a party to provide other parties with "the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses . . . , identifying the subjects of the information." Fed. R. Civ. P. 26(a)(1)(A). Rule 26 also requires a party to supplement or amend its disclosures and discovery responses if it learns that the information disclosed or the response is "incomplete or incorrect and if the additional corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). To ensure compliance with these discovery requirements, Rule 37 provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1).

This court has stated that "the sanction of exclusion is automatic and mandatory unless the sanctioned party can

show that its violation of Rule 26(a) was either justified or harmless." *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998). However, we also have stated that "[t]he determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1363 (7th Cir. 1996); *see also Salgado*, 150 F.3d at 739 (stating that a district court's ruling on a motion to exclude testimony for noncompliance with Rule 26(a) is reviewed for an abuse of discretion and "[u]nder this standard, we shall affirm the judgment of the district court whenever we believe that the district court chose an option that was among those from which we might expect a district court reasonably to choose"). "A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). However, we have indicated that the following factors should guide the district court's discretion: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *See Bronk v. Ineichen*, 54 F.3d 425, 428 (7th Cir. 1995) (citing *Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1245 (7th Cir. 1982)); *see also Woodworker's Supply, Inc.*, 170 F.3d at 993.

Caterpillar submits that the district court abused its discretion in permitting Dieckow to testify that, when he asked Mitzelfelt why Lusher was promoted to sergeant, Mitzelfelt told him that "he had been told by upper management that the next promotion in the department would have to be a female in response to a lawsuit that was recently filed in East Peoria by another female security

officer," and that "they had looked at every female em-ployee in [the] department as a candidate for sergeant," including his secretary. R.120 at 266-67. In support of its position, Caterpillar asserts that Ms. David's counsel learned of Dieckow's conversations with Mitzelfelt in August 1999; that Ms. David did not supplement her Rule 26(a)(1) disclosures to identify Dieckow and Mitzel-felt's alleged remarks; that Ms. David did not supplement her answer to Caterpillar's interrogatories requesting the identity of persons with knowledge relating to her claims and the facts known by them; and that Caterpillar learned of Mitzelfelt's alleged statements only days before trial.

In ruling on Caterpillar's renewed motion for a judg-ment as a matter of law, the district court determined that the exclusion of Dieckow's testimony was not required under Rule 37. The district court noted that Dieckow was listed as a potential witness nearly a year and one-half before trial; that Caterpillar did not seek a continuance so that it could obtain additional information to rebut Dieckow's testimony; and that Caterpillar introduced evidence that directly rebutted Dieckow's testimony when it called Mitzelfelt to testify that he had no such conversa-tion with Dieckow. In light of these facts, the district court determined that Caterpillar was not prejudiced by Ms. David's potential discovery violation. The district court also noted that there was no showing that Ms. David's counsel had acted in bad faith.

Given the district court's thoughtful discussion of this issue, we cannot say that it abused its discretion in per-mitting Dieckow to testify at trial. Caterpillar knew Dieckow was a potential witness for eighteen months; it interviewed Dieckow and learned the subject of his testimony prior to trial; it did not seek a continuance; and it was able to rebut directly Dieckow's testimony at trial.

Caterpillar called Mitzelfelt, and he squarely denied making any such statements. Because Mitzelfelt was the only other person privy to the conversation in question, the district court reasonably could have determined that Caterpillar was not prejudiced by Ms. David's failure to disclose in a timely manner the subject of Dieckow's testimony.

## B. Sufficiency of the Evidence

Caterpillar submits that there is insufficient evidence to support the jury's verdict that Caterpillar retaliated against Ms. David when it selected Lusher for promotion over Ms. David. We disagree. Although the evidence cannot be characterized as overwhelming, it is legally sufficient to support the jury's verdict of retaliation.

Title VII makes it unlawful for an employer to discriminate against an employee for opposing a practice made unlawful under the Act. *See* 42 U.S.C. § 2000e-3(a). To prove a case of retaliation, the plaintiff must prove three elements by a preponderance of the evidence: (1) that she opposed an unlawful employment practice; (2) that she suffered an adverse employment action; and (3) that the adverse employment action was caused by her opposition to the unlawful employment practice. *See Cullom v. Brown*, 209 F.3d 1035, 1040 (7th Cir. 2000). In this case, only the third element is in dispute.

An employee can establish her employer's intent to retaliate either directly or indirectly. In the context of this case, the only issue post-trial is whether Ms. David has met her burden of providing sufficient evidence that Caterpillar's stated reasons for promoting Lusher over Ms. David were pretextual and that the real reason for Caterpillar's decision was to retaliate against Ms. David for filing

EEOC charges. *See Hall v. Gary Cmty. Sch. Corp.*, 298 F.3d 672, 675 (7th Cir. 2002). To satisfy this burden Ms. David needed to offer evidence showing that the reasons given by Caterpillar "were not worthy of credence or other evidence showing retaliation." *Id.*

We review a post-trial motion for judgment as a matter of law de novo, but view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in her favor. *See Riemer v. Illinois Dept. of Transp.*, 148 F.3d 800, 805 (7th Cir. 1998). We shall not second-guess the jury's view of the contested evidence; the proper inquiry is whether, given the totality of the evidence, Ms. David presented sufficient evidence from which a reasonable jury could find in her favor. *See Hall*, 298 F.3d at 675. Because credibility determinations are often crucial in retaliation suits, we are particularly careful in such cases "to avoid supplanting our view of the credibility or weight of the evidence for that of both the jury (in its verdict) and in the judge (in not interfering with the verdict)." *Emmel v. Coca-Cola Bottling Co. of Chi.*, 95 F.3d 627, 630 (7th Cir. 1996) (quoting *Hybert v. Hearst Corp.*, 900 F.2d 1050, 1054 (7th Cir. 1990)).

Caterpillar offered evidence at trial that it had selected Lusher for promotion to sergeant over Ms. David because Lusher was more qualified. Ms. David argued that this explanation was pretextual and that Caterpillar had selected Lusher rather than her in retaliation for Ms. David's having filed charges of discrimination with the EEOC. Upon examination of the record, we must conclude that the following evidence, taken together, is sufficient to support the jury's verdict in favor of Ms. David: (1) Ron Dieckow's testimony relating to his conversations with Larry Mitzelfelt; (2) Ms. David's testimony that her superiors were hostile toward her after she complained of

discrimination; and (3) Ms. David's and Lusher's comparative qualifications in combination with Caterpillar's shifting explanations for its decision.[1]

Although Caterpillar urges us to ignore Dieckow's testimony, we already have determined that the district court did not abuse its discretion in permitting Dieckow to testify and, therefore, it was proper for the jury to consider this evidence in reaching its verdict. Dieckow testified that, shortly after Lusher's promotion, he had pointed out to Captain Mitzelfelt that Lusher had only four years of service with the company and asked why she had received the promotion. Mitzelfelt replied that "he had been told by upper management that the next promotion in the department would have to be a female in response to a lawsuit that was recently filed in East Peoria by another female security officer." R.120 at 266. Dieckow further testified that he had another conversation with Mitzelfelt a few days later. Mitzelfelt then told him that management "had looked at every female employee in [the] department as a candidate for sergeant" and "even considered his secretary, Sandy Daniels, as a possible candidate for a sergeant's job." *Id.* at 267.

According to Dieckow's testimony, Mitzelfelt did not mention Ms. David by name. However, because Ms. David was the only female security officer in East Peoria who had filed a lawsuit against Caterpillar at that time, the jury

---

[1]   The district court also referred to Rebecca Smith's testimony that she believed that she had been discharged from the security department in retaliation for complaining about sexual harassment. We need not determine whether this evidence should have been admitted, a point of dispute between the parties. The evidence noted in the text is sufficient to sustain the jury's verdict.

readily could have inferred that the statement referred to Ms. David. Additionally, although Mitzelfelt told Dieckow that management considered every woman in the security department, including his secretary, as a potential candidate for the position, Ms. David testified that she had not been considered for the promotion. Ms. David testified that she had requested a promotion on numerous occasions and yet, when the sergeant position became available, she was not approached about the promotion. In contrast, Lusher had expressed no interest in obtaining a promotion and yet, Captain Richardson, along with Lusher's immediate supervisor, Sergeant Kegley, solicited her candidacy for the position. *See* R.121 at 641. Read in conjunction with Ms. David's testimony that she was not considered for the position, even though she repeatedly had expressed interest in being promoted, we believe that Dieckow's testimony provides some evidence from which the jury could have drawn an inference of retaliation. The jury was entitled to conclude that Dieckow's testimony shows that Caterpillar was convinced of the need to promote a woman in response to Ms. David's allegations of sex discrimination; from this testimony and supporting evidence, the jury could have inferred that Caterpillar was equally convinced that the first woman to be promoted in the security department would not be Ms. David.[2]

---

[2] We note that Caterpillar has not contested the import of Dieckow's testimony. Although Caterpillar devotes much of its brief to persuading us why this evidence should have been excluded under Rule 37, it devotes none of its brief to challenging the significance of this evidence. Indeed, Caterpillar submits that "absent Dieckow's testimony, there is insufficient evidence to support the jury's verdict." Appellant's Br. at 25.

Caterpillar next asserts that Ms. David's testimony that she was treated differently by her supervisors after complaining about what she perceived to be the differential treatment of males in the promotion process is insufficient to establish that Lusher's promotion was motivated by retaliation. Caterpillar submits that Ms. David's statements were vague and did not relate to the employment decision that Ms. David is challenging—the Lusher promotion. We cannot accept this argument.

Ms. David testified that, after she complained internally about discrimination and filed charges with the EEOC, Sergeant Shilling and Captain Richardson became hostile toward her. Ms. David testified: "I was totally ignored. The only time I was spoken to is if they had a need to speak to me. If I said 'hello' to them, they would not answer. They dropped their eyes when they walked by, turned the other way. It was evident [that] they were upset." R.120 at 379. Ms. David further testified that Schilling and Richardson "ostracized" her and that when they "actually had to talk" to her, they would turn the encounter into "an angry situation." *Id.* at 379. For example, Ms. David testified that, immediately after she complained to Richardson about discrimination in awarding promotions, he responded by pounding on the table and shouting: "If it's a lawsuit you want, I don't want no part of it." *Id.* at 371.

Additionally, Ms. David testified that, after she filed a charge of discrimination, she learned of a promotional opportunity outside of the security department, that she approached Schilling and Richardson about the opportunity and that they deliberately avoided completing the necessary paperwork. *See id.* at 380-81. Similarly, Ms. David testified that Shilling denied her time off for illness and that he only approved her vacation leave after she emphasized that another security officer had received,

without any objection from management, 32 consecutive days of vacation leave. *See id.* at 381-82.

Ms. David also testified that Shilling and Richardson attempted to deny her an educational leave of absence. Ms. David testified that she wanted the leave because Richardson had told her that she needed a college degree if she expected to advance in the security department and that she believed she could accelerate the process by taking two classes during a month in the summer. Because the plant would be shut down for two of the four weeks, Ms. David thought this was a "prime opportunity." *Id.* at 389. However, Ms. David testified that, when she approached Shilling with this request, he told her "No. . . . Worry about work. Don't worry about school." *Id.* at 389. After receiving this negative response from Shilling, Ms. David approached Richardson about the leave, only to be asked "what did Gary [Shilling] say?" and then to be told "I have to agree with him." *Id.* at 390. If believed, the jury reasonably could have determined that such testimony, in combination with other evidence, supported a finding of retaliatory intent. It was the prerogative of the jury to determine the weight to give such testimony in the course of its deliberations.

To the extent that Caterpillar argues that Shilling's and Richardson's treatment of Ms. David following her complaint of discrimination is irrelevant because they were not the "decisionmakers" who promoted Lusher over Ms. David, we cannot accept such a submission. Although statements by a nondecisionmaker ordinarily do not satisfy a plaintiff's burden of proof in an employment retaliation case, this court has recognized that "if a manager with a retaliatory motive is involved in the [employment] decision . . . , that retaliatory motive, in some circumstances, may be imputed to the company, even if the

manager with a retaliatory motive was not the ultimate decisionmaker." *Paluck v. Gooding Rubber Co.,* 221 F.3d 1003, 1010 (7th Cir. 2000). Specifically, we have stated that the retaliatory motive of a "nondecisionmaker" may be imputed to the company where the "nondecisionmaker" influenced the employment decision by concealing relevant information from, or feeding false information to, the ultimate decisionmaker. *See Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1400 (7th Cir. 1997). "In such a case, the [retaliatory] motive of the other employee, not the autonomous judgment of the nondiscriminating decision-maker, is the real cause of the adverse employment action." *Id.*

In this case, Ms. David testified, and the jury was entitled to believe, that both Shilling and Richardson played a significant role in Caterpillar's decision to promote Lusher over Ms. David. Ms. David asserted that it was the sergeants' duty to evaluate security officers and make recommendations to the captains for promotions. Ms. David's testimony on this point was supported by other evidence, including Caterpillar's written job description for security sergeants, which provided: "Security sergeants direct and train a staff of security officers and provide recommendations to the security captain regarding merit increases [and] promotions." R.119 at 84. It is undisputed that Shilling was Ms. David's sergeant and that he did not recommend her for promotion, even though she consistently had excellent performance evaluations. In addition, Richardson was the individual who approached Lusher about the promotion and recommended to Beckner that Lusher be given the position. Beckner, who had virtually no personal contact with Ms. David, testified that, when it came to promotional decisions, he would have received the necessary information about Ms. David from Richardson. *See* R.122 at 683-84 (Q: "My point is when

it came to the promotional issue, the person that you would have received the information about Lori David from would have been Ray Richardson? A: That's correct.").

Under these circumstances, the fact that Shilling and Richardson may not have had the final say regarding Lusher's promotion does not render Ms. David's testimony completely irrelevant. Given Caterpillar's system for awarding promotions, we believe that Shilling's and Richardson's actions were tantamount to concealing relevant information from, or feeding false information to, the ultimate decisionmaker. Thus, the jury properly could have considered this evidence in finding that Caterpillar retaliated against Ms. David when it selected Lusher for promotion.

Finally, Caterpillar submits that the comparative qualifications of Ms. David and Lusher do not support an inference of retaliation because Ms. David's credentials were not so far superior that no reasonable employer could have concluded that Lusher was the better person for the job. In support of this argument, Caterpillar relies on *Millbrook v. IBP, Inc.*, 280 F.3d 1169 (7th Cir. 2002), *cert. denied*, 123 S. Ct. 117 (2002) (No. 02-120).

In *Millbrook*, we held that, when an employer asserts that it chose another applicant over the plaintiff because the selected candidate was more qualified, "evidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Id.* at 1180 (internal quotations omitted). Applying this standard to the facts of this case, we agree that a comparison of Ms. David's and Lusher's relative qualifications, standing alone, would be insufficient to support the jury's verdict.

At the time of Lusher's promotion, Ms. David had worked as a Caterpillar fire and security officer for six years, while Lusher had worked in the same position for almost four years. Ms. David had a two-year associate degree in law enforcement and was working toward a four-year college degree; in contrast, Lusher had no formal education beyond high school. Ms. David also had substantial police-related training; Lusher had no comparable training. Lusher, however, had significantly more fire and emergency training than Ms. David. Based on a comparison of these qualifications, Ms. David may well have been more qualified than Lusher, but we cannot conclude that the differences between the two candidates "are so favorable" to Ms. David "that there can be no dispute among reasonable persons of impartial judgment that [she] was clearly better qualified" for the sergeant position. *Id.*

However, Ms. David's qualifications are not wholly irrelevant. Nothing in *Millbrook* forecloses a comparison of qualifications in a case, such as this, where the employer offers conflicting explanations for its employment decision. *See Millbrook*, 280 F.3d at 1183 ("While Millbrook believes the jury should be allowed to review the candidates' relative qualifications to decide whether or not IBP lied, without any evidence calling into question IBP's veracity," such an analysis is not permitted.). At trial, Caterpillar gave conflicting reasons for why Ms. David was not promoted; both Shilling and Richardson, and to a lesser extent Beckner and Ruxlow, were impeached on numerous occasions with prior inconsistent testimony, and their explanations were not supported by other evidence in the record.[3] Under these circumstances, we be-

---

[3] For example, Shilling testified that, even though he considered Ms. David to be one of his best employees and could

(continued...)

---

[3] (...continued)
think of no reason why she should not have been promoted, he never had recommended her for promotion. *See* R.119 at 88. Shilling's explanation for not recommending Ms. David was that she did not ask to be promoted in the security department. *See id.* This assertion contradicted Ms. David's testimony that she repeatedly had told Shilling she wanted to be promoted to the rank of sergeant and that Shilling responded by telling her that no woman would ever be promoted in the department. Additionally, Shilling knew that Ms. David's EEOC charge protested her lack of promotion in the security department. Moreover, Shilling admitted that he had recommended a different security officer for promotion despite the fact that the officer never asked to be promoted. *See id.* at 86, 88.

Similarly, Richardson testified that in October 1994, Ms. David complained to him about only males being promoted in the security department and that he advised her to complete her four-year college degree. *See* R.120 at 215. However, Richardson admitted that Lusher did not have a degree when she was promoted to sergeant, nor did Emerson Hahn, Randy Warner or Ken Elliott when they were promoted. *See id.* at 215-16. Additionally, Richardson testified that one of the reasons he did not recommend Ms. David for promotion was that he did not know she was interested in obtaining a promotion in the security department. *See id.* at 210. This testimony, however, squarely contradicted Richardson's testimony regarding Ms. David's complaints of sex discrimination in October 1994, as well as Richardson's knowledge of Ms. David's EEOC charge. *See id.* at 211-12. Moreover, Richardson admitted that he recommended that Lusher be promoted to sergeant, even though she had not previously requested such a promotion. Finally, Richardson testified that the other reason he did not recommend Ms. David for promotion was that he felt she needed to work on her interpersonal skills and her relationship with co-workers. *See id.* at 218. Richardson was impeached numerous times on this issue. When asked at trial whether he per-
(continued...)

lieve that the jury reasonably could have doubted Caterpillar's assertion that it honestly believed Lusher to be the better candidate.

Furthermore, in *Millbrook*, we addressed the relatively narrow issue of the circumstances under which evidence of comparative qualifications, *standing alone*, is sufficient to support a jury verdict of discrimination. In this case, Ms. David offered additional evidence of retaliation, including Dieckow's testimony and evidence regarding hostility toward Ms. David after she complained of discrimination. The *Millbrook* standard is controlling in cases in which the plaintiff relies exclusively on evidence of the applicants' comparative qualifications; however, it is not controlling where the plaintiff offers other evidence of retaliation in addition to the differences in relative qualifications. We recognized as much in *Millbrook*.[4] Ac-

---

[3] (...continued)
sonally observed any specific instance in which Ms. David failed to get along with her co-workers, Richardson stated: "I would have to say that I did." *Id.* at 212. However, when asked the same question in his deposition, Richardson answered "no." *Id.* at 213. Similarly, when asked whether he could recall an instance in which someone else reported to him that Ms. David did not get along with her co-workers, Richardson responded: "There was an instance." *Id.* However, when asked the same question during his deposition, Richardson stated "no." *Id.* at 214. Thereafter, Richardson admitted at trial that he could not identify a specific instance in which Ms. David failed to demonstrate "good people skills." *Id.* Richardson also admitted that Ms. David consistently had excellent written reviews. *See id.* at 204-05.

[4] Relying on *Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d 627 (7th Cir. 1996), and *Bell v. Environmental Protection*
(continued...)

cordingly, the jury properly could have weighed Ms. David's qualifications against those of Lusher in reaching its verdict.

In summary, we believe that when the evidence is viewed in its totality, Ms. David provided sufficient evidence from which a rational jury could have concluded that retaliation was a determining factor in Caterpillar's decision to promote Lusher over Ms. David.

## C. New Trial

Caterpillar submits that, if it is not entitled to judgment as a matter of law, then a new trial should be granted so that Caterpillar has a fair opportunity to prepare a full defense to Dieckow's testimony and to eliminate any prejudice caused by the admission of Rebecca Smith's testimony. "The decision whether to grant a new trial is committed to the discretion of the district court, and we therefore will not disturb that decision except under exceptional circumstances showing a clear abuse of discretion." *Crossley v. Gen. Motors Corp.*, 33 F.3d 818, 821 (7th Cir. 1994) (internal quotations omitted).

---

[4] (...continued)
*Agency*, 232 F.3d 546 (7th Cir. 2000), the plaintiff in *Millbrook* argued that, when an employer asserts that it had selected the most qualified candidate, "the jury may return a verdict of discrimination if, after reviewing the applicants' relative qualifications, it simply does not believe the employer's assertion." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1177-78 (7th Cir. 2002). In rejecting the plaintiff's argument, we distinguished *Emmel* and *Bell* on the basis that in those cases "the plaintiffs presented evidence of discrimination beyond the relative qualifications of the candidates." *Id.*

A new trial may be granted if the verdict is against the clear weight of the evidence or the trial was unfair to the moving party. *See Miksis v. Howard*, 106 F.3d 754, 757 (7th Cir. 1997). For the reasons discussed above, we do not believe that the verdict is against the clear weight of the evidence, nor do we believe that the trial was unfair to Caterpillar.

The district court reasonably concluded that Caterpillar was not prejudiced by Ms. David's delay in revealing the substance of Dieckow's testimony. Notwithstanding Caterpillar's contention that it was unable to prepare a full defense, Caterpillar was able to directly rebut Dieckow's testimony when it called Mitzelfelt to testify that he had no such conversation with Dieckow.

As to Rebecca Smith's testimony, we need not determine definitively whether her testimony that she believed that she had been discharged from the security department in retaliation for complaining about sexual harassment should have been admitted. Although a new trial may be granted based on an error in the admission of evidence, we have stated that "[a] court should only grant a new trial if the improperly admitted evidence had a substantial influence over the jury, and the result reached was inconsistent with substantial justice." *Shick v. Illinois Dep't of Human Servs.*, 307 F.3d 605, 611 (7th Cir. 2002) (internal quotations omitted). Even if the district court erred in admitting Smith's testimony, we do not believe that the testimony had a "substantial influence over the jury." *Id.* Wholly apart from Smith's testimony, there was sufficient evidence from which a rational jury could have concluded that retaliation was a determining factor in Caterpillar's decision to promote Lusher over Ms. David.

### D. Compensatory Damages

Caterpillar asserts that the award of compensatory damages should be vacated or further reduced because it is excessive and not supported by the evidence. We review a district court's remittitur under an abuse of discretion standard. *See Jabat, Inc. v. Smith*, 201 F.3d 852, 857 (7th Cir. 2000). In reviewing an award of compensatory damages, we are guided by three inquiries: (1) whether the award is monstrously excessive; (2) whether there is no rational connection between the award and the evidence; and (3) whether the award is roughly comparable to awards made in similar cases. *See E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1285 (7th Cir. 1995).

In this case, the jury awarded Ms. David compensatory damages in the amount of $100,000. The district court, however, found that amount "excessive compensation for the embarrassment, disappointment, inconvenience, and frustration that Ms. David experienced as compared to the amounts awarded in comparable, and arguably more egregious, cases." R.147 at 10. After reviewing a series of cases from this court, the district court reduced the compensatory award from $100,000 to $50,000.

Given the discretionary standard of review and the district court's thoughtful consideration of this issue, we cannot conclude that the district court abused its discretion. Ms. David testified that following Lusher's retaliatory promotion she became depressed, angry and humiliated. She testified that she felt "robbed" and "cheated" when the promotion was given to Lusher, "like a truck had just run [her] over." R.124 at 970-71. Ms. David believed that she had been sent a message: "Lori David shut up. Don't raise your hand. You know, be a good employee. Just come to work, do your job and don't question things." *Id.* at 975. For a two-week period, Ms. David went home

straight from work at 5:00 p.m. and went to bed. Thereafter, Ms. David continued to experience stomach aches and difficulty sleeping at night as a result of the anxiety and stress. Additionally, Ms. David testified that she felt she had no choice but to reposition herself for a career in marketing because she had no chance of promotion in security; as a result, Ms. David took an educational leave and was forced to use her savings in order to help finance the completion of her degree.

Based on the foregoing evidence, the district court made a reasoned decision when it reduced the $100,000 award to $50,0000; there is no justification for our second-guessing that determination.

### E. Punitive Damages

Caterpillar further submits that the award of punitive damages should be vacated or substantially reduced because it is excessive and against the manifest weight of the evidence.

Title VII authorizes an award of punitive damages when a plaintiff demonstrates that the employer has engaged in intentional discrimination "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). "The terms 'malice' and 'reckless indifference' refer to the employer's knowledge that it may be violating federal law, not its awareness that it is engaging in discrimination." *Cooke v. Stefani Mgmt. Servs., Inc.*, 250 F.3d 564, 568 (7th Cir. 2001) (citing *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535 (1999)).

In this case, the jury awarded Ms. David punitive damages in the amount of $750,000. Under 42 U.S.C. § 1981a(b)

(3)(D), the district court was required to reduce the award to no more than $250,000. However, the district court determined that an additional reduction in the punitive damages award to $150,000 was required to maintain a reasonable relationship between the award and the particular harm that resulted from Caterpillar's misconduct.

Before this court, Caterpillar argues primarily that Ms. David should not be awarded punitive damages because she wanted to leave the security department and Caterpillar helped her to do so. In its estimation, Caterpillar treated Ms. David well; she ultimately received "a promotion to a marketing job where she is now earning more compensation and has far greater potential for advancement than she would have had she remained in security." Appellant's Br. at 38. We think that Caterpillar's argument misses the mark. Caterpillar has cited no authority for the proposition that good deeds taken by the employer after it has made an unlawful employment decision somehow insulate the employer from an award of punitive damages. Furthermore, the jury was entitled to reject Caterpillar's contention that Ms. David really did not want to be promoted in the security department when it awarded her damages for emotional distress.

Because the award is not monstrously excessive and the district court carefully reviewed the evidence and relevant case law in its order granting the remittitur, we are not inclined to second-guess its evaluation.

## F. Back Pay

Finally, Caterpillar submits that the award of back pay and prejudgment interest should be vacated or substantially reduced because the award is unnecessary to make Ms. David whole.

"The district court has broad equitable discretion to fashion back pay awards to make the Title VII victim whole." *E.E.O.C. v. Ilona of Hungary*, 108 F.3d 1569, 1579 (7th Cir. 1997). Once the jury found unlawful retaliation in violation of Title VII, "there was a strong presumption that [Ms. David] was entitled to a back pay award on the basis of what she would have earned absent the discrimination." *Id.* With this presumption in mind, the district court awarded Ms. David back pay from July 3, 1995, the date the jury found that she should have been promoted to security sergeant, through the end of May 1996, when she transferred to Caterpillar's marketing department. The amount awarded, $35,426.71, represents the difference between what Ms. David earned during this period and what was earned by Lusher, the person who was wrongfully promoted.[5]

Caterpillar objects to the district court's award of back pay on two grounds. First, Caterpillar submits that the award should be vacated because, although Ms. David "did not get one job she claims she once wanted, she was given another job that she had pursued for years, and is now earning more compensation and has greater potential for advancement than she would have had she accepted the sergeant job offered to Lusher." Appellant's Br. at 40.

We cannot accept this argument. The jury was entitled to reject Caterpillar's argument that Ms. David's real goal was to leave the security department for marketing, and indeed, the record is full of evidence that she wanted to be pro-

---

[5] Based on this amount, the district court also awarded Ms. David $20,697.81 in prejudgment interest. Caterpillar's challenge to the award of prejudgment interest is tied to its challenge of back pay.

moted in security. The fact that Ms. David now has greater earning and advancement potential is irrelevant to the issue of back pay; Ms. David is not seeking an award of front pay.

Second, Caterpillar argues that, at a minimum, the award should be reduced substantially because Ms. David should not be compensated for the time when she went on voluntary educational leave. In Caterpillar's view, an award of back pay for this time is contrary to her duty to mitigate her damages. We see no merit in this argument. Ms. David took an educational leave in response to Captain Richardson's instruction that she needed to obtain her degree in order to have a realistic chance of being promoted in the security department. The district court was entitled to conclude that, had Ms. David been promoted to sergeant, instead of Lusher, she would not have taken the educational leave. Moreover, had Ms. David not gone on educational leave, she would not have been eligible for transfer to a higher paying position in the marketing department.

## Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*