Paul E. LUCAS, Sr. and Ruby
M. Lucas, Plaintiffs,

v.

GC SERVICES L.P.; DLS Enterprises,
Inc.; and GC Financial Corporation,
Defendants.

No. 2:03 CV 498.

United States District Court,
N.D. Indiana,
Hammond Division.

Nov. 3, 2004.

Order Clarifying Decision
in Part Feb. 2, 2005.

Cathleen M. Combs, Daniel A. Edelman,
James O. Latturner, Tara L. Goodwin, Edel-
man Combs & Latturner LLC, Chicago, IL,
for Plaintiffs.

David M. Schultz, Hinshaw and Culbert-
son, Chicago, IL, Renee J. Mortimer, Hin-
shaw and Culbertson, Schererville, IN, for
Defendants.

## ORDER

RODOVICH, United States Magistrate
Judge.

This matter is before the court on the
Renewed Motion to Compel filed by the

plaintiffs, Paul and Ruby Lucas, on September 22, 2004; the Cross–Motion to Stay Discovery filed by the defendants, GC Services, DLS Enterprises, and GC Financial Corporation, on October 5, 2004; the Motion to Add Supplemental Authority to Motion to Dismiss filed by the defendants on September 17, 2004; the Motion to Add Supplemental Authority to Certain Motions Pending filed by the defendants on October 19, 2004; and the Motion for Leave to File Additional Authority in Support of Opposition to Dismiss and Opposition to Strike the Expert Opinion of Dr. Timothy Shanahan filed by the plaintiffs on October 25, 2004. For the reasons set forth below, the motion to compel is **GRANTED**, the motion to stay is **DENIED**, the motion to add supplemental authority filed on September 17, 2004 is **GRANTED**, the motion to add supplemental authority filed on October 19, 2004 is **DENIED**, and the motion to add additional authority filed on October 25, 2004 is **GRANTED**.

### Background

This discovery dispute arises from a suit filed by Paul and Ruby Lucas on November 19, 2003, alleging that a dunning letter sent to them by the defendant, GC Services, violated the Fair Debt Collection Practices Act ("FDCPA"). Defendants DLS Enterprises and GC Financial Corporation are the general partners of GC Services (collectively called "GCS").

On January 30, 2004, the plaintiffs filed their first motion for Class Certification, which the plaintiffs renewed by permission of the court on August 20, 2004. On February 25, 2004, the plaintiffs served discovery on the defendants in the form of requests for admissions, interrogatories, and requests for production of documents. The majority of this discovery was relevant to the issue of class certification. On April 21, 2004, the defendants responded to the plaintiffs' discovery. These responses are the subject of the current motion to compel.

On June 10, 2004, the plaintiffs filed their first motion to compel seeking to compel the defendants to answer their discovery more completely. On June 24, 2004, the defen- dants filed a crossmotion to compel because the plaintiffs did not sign their responses to the discovery propounded by the defendants. On August 6, 2004, this court denied both motions to compel without prejudice because neither party filed a certification pursuant to Local Rule 37.1.

On September 2, 2004, the defendants filed a motion to dismiss the plaintiffs' amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). On September 22, 2004, the plaintiffs renewed their June motion to compel because the defendants still had not corrected their deficient discovery responses. The renewed motion contained an affidavit from the plaintiffs' attorney, Alexander H. Burke, stating that the parties attempted to confer on September 20, 2004. Attorney Burke stated that the defendants' position was that the plaintiffs' original discovery was rendered moot by this court's Order of August 6, 2004, and that the plaintiffs must propound new discovery requests. Finally, on October 5, 2004, the defendants filed a motion to stay discovery until after the court ruled on the defendants' motion to dismiss. The discovery deadline for this case is January 31, 2005.

### Discussion

Federal Rule of Civil Procedure 37(a)(2)(A) states that "[i]f a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions," provided that the movant certifies that it first attempted to confer with the side not making disclosure. Rule 37(a)(3) states that "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Finally, Rule 37(c)(1) states that a party who fails to disclose, provides false or misleading disclosure, or refuses to admit information required by Rule 26(a) without "substantial justification" may be sanctioned unless such failure was "harmless." *See Musser v. Gentiva Health Services,* 356 F.3d 751, 755 (7th Cir.2004); *Salgado v. General Motors Corp.,* 150 F.3d 735, 742 (7th Cir. 1998). The trial court has broad discretion to determine whether a violation is justified

**330**

or harmless. *See David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir.2003).

Under Rule 37(c), the trial court may impose sanctions which include the payment of attorney's fees, designating certain facts as established, preventing the disobedient party from supporting or opposing designated claims or defenses or "introducing designated matters in evidence," and striking pleadings. *See* Federal Rule of Civil Procedure 37(b)(2)(A)-(C); Federal Rule of Civil Procedure 37(c)(1). However, the sanctions chosen by the court must be such that "a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction." *Salgado,* 150 F.3d at 740; *In re Golant,* 239 F.3d 931, 937 (7th Cir.2001). Although the court "need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose," the court may consider the "bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David,* 324 F.3d at 857.

■ In this instance, the GCS's discovery responses were egregiously evasive and incomplete. Within their responses to the plaintiffs' requests for admissions, GCS objected to Request No. 2 to admit the designation "867–01" was a "form number" because the term "form number" was vague and ambiguous. Despite the plaintiffs attaching photocopies of the letters GCS sent to the plaintiffs and inviting GCS to review the originals at its convenience, GCS denied Requests Nos. 3–8 to admit the number of persons to whom those form letters were sent on the grounds that the exhibits did not "accurately reflect the font print on the letters sent by GCS." GCS refused to answer Requests No. 9–11 regarding the "defendant's" net worth on the basis that the term "defendant" was vague and ambiguous, and then stated that it would be willing to provide this information if a class is certified.

Turning to the defendants' answers to interrogatories, the defendants stated that they could not determine who authorized, approved, or was aware of the form letter sent to the plaintiffs because it was developed over a substantial period of time. Defendants refused to describe the process by which GCS transmitted the letters on the grounds that the interrogatory was vague and overbroad and that the exhibits attached "are not originals and do not adequately represent the letters to the plaintiffs." Defendants refused to answer interrogatories directed at steps GCS takes to collect a debt or describing document destruction and retention policies because these requests were vague, overbroad, and not reasonably calculated to lead to discoverable evidence. GCS categorically refused to answer interrogatories regarding Indiana residents who received the form letter at issue and the defendants' net worth on the grounds that this information is only relevant if a class is certified, and then further stated that because the photocopies of the letters did not "adequately represent the form letters sent by GCS, there are no people sent said letter."

Finally, with respect to the defendants' responses to requests for production of documents, the defendants claimed that virtually every document requested by the plaintiffs, from the technical specifications for paper, ink, and, manuals, and other memoranda setting forth instructions for compliance with the FDCA to pre-existing organizational charts for GCS, are protected by the attorney-client and work-product privileges. Defendants have refused to provide information regarding who, other than the defendants, printed or mailed the form letters on the same grounds.

In short, GCS has responded to the discovery propounded by the plaintiffs by providing no responses at all. Aside from numerous other illogical objections, defendants have taken the preposterous position that they do not have to answer much of the plaintiffs' discovery because the photocopies of the original letters are not "adequately representative" of the originals themselves, despite invitations by the plaintiffs to review the actual documents. Moreover, the defendants have cited the attorney-client and work-product privileges as a basis for refusing to provide information that so obviously falls outside these privileges that it does not merit discussion. Finally, the defendants have refused to respond to discovery largely on the grounds that it is only relevant in the event a

class is certified, even though the defendants did not file a motion to stay discovery on these grounds until after the plaintiffs filed their second motion to compel and over one month following the plaintiffs' motion to dismiss.

The defendants do not get to determine unilaterally the scope and timing of discovery. The plaintiffs filed their first motion for class certification on January 30, 2004, one month before propounding discovery regarding the class issues on the defendants. Yet the defendants did not raise the scope or relevancy of this discovery to the court in the six months preceding the defendants' June 24, 2004 response to the first motion to compel, in the response itself, or in the motion to dismiss filed by the defendants on September 2, 2004. Nevertheless, since April 21, 2004, the defendants have determined that they do not need to respond to the plaintiffs' discovery until after the court has ruled on the motion for class certification. While there may be merit in staying discovery of class issues pending a motion to dismiss, the defendants have lost this privilege by waiting until after their discovery responses were due to raise this issue.

In light of the blatant and willful bad faith the defendants have displayed throughout this discovery dispute, the court finds the defendants' conduct to be without substantial justification and harmful to the litigation of this case. Furthermore, the plaintiffs do not need to propound new discovery upon the defendants. The court denied the plaintiffs' first motion to compel on procedural grounds, not on the substantive merit of the plaintiffs' discovery.

For the foregoing reasons, the Renewed Motion to Compel filed by the plaintiffs, Paul and Ruby Lucas, on September 22, 2004 is **GRANTED**; the Cross–Motion to Stay Discovery filed by the defendants, GC Services, DLS Enterprises, and GC Financial Corporation, on October 5, 2004 is **DENIED**; the Motion to Add Supplemental Authority to Motion to Dismiss filed by the defendants on September 17, 2004 is **GRANTED**; the Motion to Add Supplemental Authority to Certain Motions Pending filed by the defendants on October 19, 2004 is **DENIED**; and the

Motion for Leave to File Additional Authority in Support of Opposition to Dismiss and Opposition to Strike the Expert Opinion of Dr. Timothy Shanahan filed by the plaintiffs on October 25, 2004 is **GRANTED**. Pursuant to Federal Rule of Civil Procedure 37(c), the court further ORDERS the following sanctions against the defendants:

1) Requests for Admissions No. 1 and 2 are deemed admitted;

2) The defendants are deemed to admit that the photocopies of the letters sent to the plaintiffs, referenced as "Exhibits A–B" throughout the discovery, do accurately reflect the font print of the letters sent by GCS;

3) The defendants shall respond to all outstanding interrogatories and requests for production within ten (10) days of the date of this order; and

4) The defendants shall pay the plaintiffs' attorney's fees related to both the first motion to compel filed by the plaintiffs on June 10, 2004 and the renewed motion to compel filed by the plaintiffs on September 22, 2004. Counsel for the plaintiffs shall file an affidavit with the court attesting to fees incurred in litigating these motions by November 23, 2004.

### CLARIFYING ORDER

This matter is before the court on the Motion for Clarification of the Order of 11/03/04 filed by the defendants, GC Services, DLS Enterprises, and GC Financial Corporation, on December 10, 2004; the Motion for Rule to Show Cause filed by the plaintiffs, Paul and Ruby Lucas, on December 15, 2004; and the Motion to Deem Admitted Certain Facts Relating to Class Certification filed by the plaintiffs on December 15, 2004. For the reasons set forth below, the motion for clarification is **GRANTED IN PART** and **DENIED IN PART**, the motion for rule to show cause is **GRANTED IN PART** and **DENIED IN PART**, and the motion to deem facts admitted is **DENIED**.

## Background

Paul and Ruby Lucas allege that a dunning letter sent to them by the defendant, GC Services, on November 19, 2003, violated the Fair Debt Collection Practices Act ("FDCPA"). Defendants DLS Enterprises and GC Financial Corporation are the general partners of GC Services (collectively called "GCS").

This latest discovery dispute between the Lucases and GCS illustrates the continued inability of the parties to cooperate on discovery matters. On November 3, 2004, this court ordered sanctions against the defendants for their grossly egregious conduct in responding to the plaintiffs' interrogatories and requests for production of documents. The various motions stem from that Order. The defendants seek to alter the language of one sanction and assert that they have complied with the Order in all other respects. The plaintiffs claim that the defendants have not complied with the Order and seek further sanctions.

## Discussion

Federal Rule of Civil Procedure 37(b)(2) states that "[i]f a party fails to obey an Order regarding discovery, 'the court may make such orders in regard to the failure as are just.'"

### Sanction # 2 in the Order
### of November 3, 2004

In the November 3, 2004 Order, this court sanctioned the defendants by deeming them to admit "that the photocopies of the letters sent to the plaintiffs ... do accurately reflect the font print of the letters sent by GCS." The defendants object to this sanction on the grounds that the darkness of the font print is a critical issue in this litigation and that admitting this point would be admitting an "obvious falsehood" based on previous rulings by courts outside this jurisdiction. The defendants' argument centers around the exhibits being photocopies of the original letters, rather than the originals themselves.

Federal Rule of Civil Procedure 36 and Rule 37 contain no requirement that the facts deemed admitted be "true" in the eyes of other courts or the punished party, or that

the facts admitted not be critical to that party's case. The effect of Rule 36 and Rule 37 sanction is simply that through its own improper conduct, a party can impede its case. GCS's original answers to the plaintiffs' discovery, which were the subject of this court's previous Order, were an attempt to subvert the discovery rules. GCS refused to answer any interrogatories regarding who was sent letters like those received by the Lucases because the photocopies attached to the discovery requests did not "accurately reflect the font print" of the original letters. GCS claimed that "no persons" received the letters described by the photocopied attachments for this reason. Taken in addition to GCS's more evasive responses to other discovery propounded by the Lucases, the court's sanction was appropriate.

However, the plaintiffs raise no objection to a modification of the second sanction in the court's November 3, 2004 Order to state:

> The defendants are deemed to admit that the photocopies of the letters sent to the plaintiffs, referenced as "Exhibits A–B" throughout the discovery, are *similar in form* to the letters sent by GCS.

Accordingly, the court's Order of November 3, 2004 is so modified.

### Sanction # 3 in the Order
### of November 3, 2004

The third sanction required the defendants to respond to all outstanding interrogatories and requests for production within ten days of November 3, 2004. The defendants submitted their untimely response to the plaintiffs on November 18, 2004. The defendants seek clarification of this sanction in that Request for Production # 23 requires the defendants to produce information in violation of the Fair Debt Collection Practices Act ("FDCPA") and the Gramm–Leach Bliley Act.

Exceptions within the FDCPA may well apply to disclosure of consumer information in this case. *See* 15 U.S.C. § 1692c(b) (allowing disclosure with "the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post-judgment judicial remedy"). In addition, the

Gramm–Leach Bliley Act ("GLB") may be irrelevant to this litigation, as the plaintiffs' complaint is based solely in the FDCPA. *See Blair v. Sherman Acquisition,* No. 04 C 4718, 2004 WL 2870080, at *4 (N.D.Ill. Dec.13, 2004). Even if the GLB were applicable, exceptions within the GLB may apply here. *See* 15 U.S.C. §§ 6802(3)(B), (D) (allowing disclosure "to protect against or prevent actual or potential fraud, unauthorized transactions, claims, or other liability" or "to persons holding a legal or beneficial interest relating to the consumer"). In any event, the court expresses no opinion on this point, as the plaintiffs do not dispute the issue and do not challenge the sufficiency of GCS's response to Request # 23. Therefore, the defendants' answer is sufficient at this time.

However, the plaintiffs raise numerous objections to GCS's other responses to the propounded discovery. First, the plaintiffs argue that the defendants wrongfully asserted six "general objections" in responding to the plaintiffs' discovery requests. While GCS should not have included these objections in their discovery responses, the objections appear to be part of a boilerplate form erroneously included with the responses. Therefore, the fact that these general objections are included with the answers is not evidence of bad faith on the part of the defendants. In order to bring the defendants' responses into greater compliance with the November 3, 2004 Order, the court hereby strikes the six "general objections" enumerated A–F, from the defendants' responses.

■ Next, the plaintiffs challenge the defendants' response to Interrogatory No. 1 on the grounds that it is evasive and incomplete. This interrogatory required GCS to state the name, address, title, and job description of each officer, director, and employee who authorized, approved, or was aware of letters in the form sent to the plaintiffs. In response, the defendants produced the name of Michael Sullivan, the manager of GC Services. On December 14, 2003, the defendants produced the names of former employee Diana Derbus with respect to Interrogatory No. 1 and GC Services CIO Michael Ellis with respect to knowledge of the computer systems at GC Services. As the defendant

failed to produce the names of Derbus and Ellis in a timely fashion and has not produced any further names, the defendants may not present any other witnesses in this case. Furthermore, the defendants are directed to produce the title, job description, and last known addresses of Ellis and Sullivan. The defendants have stated that GCS does not have a last known address for Derbus. In the event such documentation is discovered, GCS shall notify the plaintiffs immediately.

The plaintiffs also object to the defendants' response to Interrogatory No. 10 on the grounds that GCS has not completely answered the question presented. The Lucases asked both whether Sam A. Marshall exists and also that if he does not exist, who answers calls placed to 800/679–6772. The defendants answered that Sam A. Marshall is a pseudonym and that "personal representatives" are available at the phone number. The defendants' answer is vague in that it fails to name the representatives. Consistent with the court's determination with respect to Interrogatory No. 1, the defendants may not produce any further witnesses beyond Ellis, Sullivan, and Derbus in their defense.

The Lucases object to GCS's response to Interrogatory No. 3 on the grounds that the response fails to indicate the name of the third party printer who prints the form letters. GCS untimely provided the name of this company, Relizon, on December 14, 2004. Although the interrogatory did not specifically require the address and phone number of this printing company, the defendants exhibit bad faith in failing to reveal even Relizon's name until one month after this court ordered the defendants' responses. Therefore, the defendants shall provide the plaintiffs with the names of the Relizon representatives that GCS works with, as well as the company's mailing address and phone number.

Interrogatories No. 6–7 essentially seek information regarding how debtor information is culled from the GCS databases. The plaintiffs object to GCS's answers to these interrogatories on the grounds that the defendants' computer search system is ineffec-

tive in determining who belongs to a class for purposes of litigation. The plaintiffs further seek a court-ordered modification of the database to enable class information to be generated. These objections and requests go beyond the scope of discovery and are denied.

The plaintiffs' objection to GCS's response to Interrogatory No. 14 and Document Request No. 45 must also be rejected. The defendants do not need to explain, as the plaintiffs suggest, how the defendants keep current on the law. The defendants' approach to legal education is not a subject of litigation in this case.

Interrogatory No. 9 and Request No. 4 sought to identify any "testing" and documents related to testing done on the defendants' collection letters. The defendants responded that no testing was performed and that the letters were subject to only informal visual review. The plaintiffs object to the defendants' failure to name the individuals who performed the "visual review" because the plaintiffs believe the visual review is part of the defendants' bona fide error defense. This court already has determined that the defendants may not introduce any witnesses beyond Derbus, Sullivan, and Ellis. Therefore, GCS may not introduce any other witnesses to testify to the fact of this visual review.

Interrogatories No. 11–13 and Document Requests 19 and 21 seek financial information regarding the defendants' net worth. In response, the defendants provided a two-page unaudited balance sheet for GC Services and cited case law for the proposition that no other information is relevant in FDCPA cases. *See Sanders v. Jackson,* 209 F.3d 998 (7th Cir.2000). On December 14, 2004, the defendants untimely provided an audited two-page balance sheet for GC Services. However, this court ordered the defendants to provide full and complete responses. The defendants have waived all legal defenses and must comply in full with the plaintiffs' requests. Specifically, the defendants are to provide an audited balance sheet for each defendant, an identification of each lawsuit in which the defendants have provided or produced financial statements or net worth information, an identification of each instance in which the defendants have provided their net worth to any government agency, and financial statements, annual reports, semiannual and quarterly financial statements, credit applications, and tax returns for the last three years.

The plaintiffs argue that the defendants did not completely answer Request for Production No. 3, which requests all the technical specifications for paper, ink, and printing used to print the front and back of letters like those received by the Lucases. In particular, the plaintiffs seek the font weight of the print. In their response, the defendants state that the validation notices on the back of the letters are printed in "a degree of black ink." However, in their brief in opposition to the motion to show cause, the defendants explain that they have produced all information in their possession. As a practical matter, if the defendants intentionally print their letters in a degree of black ink, then a technical specification for that degree exists. The defendants are ordered to produce this information or direct the plaintiffs towards the person or entity responsible for establishing the technical specifications for font weight on their letters.

■ The plaintiffs also assert that Requests No. 6–12 and 17 are "incomplete." These Requests seek manuals, memoranda, instructions, and other documents setting forth GCS's policies, procedures, or practices related to the collection of debts and to letters such as those sent to the Lucases, as well as information regarding claims and proceedings previously conducted against the defendants for violating the FDCPA. Although the defendants initially responded that GCS had no policies on the collection of debts, the defendants untimely produced a copy of the policy "Standard Operating Procedure C–9" on December 14, 2004. *See* Pl. Response to Motion to Clarify at p. 6. Document Requests No. 8–12 and 17 demand the production of information that the defendants claim is of public record. The defendants have waived this defense and are ordered to produce the information. Furthermore, the defendants have taken the position that no internal memoranda exists regarding Re-

quest No. 17 for documents related to the maintenance of procedures GCS follows to avoid violations of the FDCPA. Therefore, the defendants may not use any internal memoranda related to compliance procedures, beyond the "Standard Operating Procedure C–9," in the presentation of their case. In the event the plaintiffs discover such procedures through other sources, the defendants shall be subject to further sanctions.

In response to Request No. 13, the defendants assert that GCS has no contracts with any entity to print or mail letters such as those sent to the Lucases. The plaintiffs assert that this claim is preposterous, in light of the size and activity of GCS. The defendants have been ordered to produce their contact information with Relizon. In the event the plaintiffs discovery such a contract through Relizon or other means, the defendants will be subject to further sanctions.

The plaintiffs object to the defendants' response to Request No. 15 on the grounds that it is evasive. The Request asks for "all organizational charts of the defendant." GCS admits that various interdepartmental documents exist, but they assert that there are no organizational charts for the company as a whole, beyond those registered with the Secretary of State's office. The request was for "all" charts. The defendants are ordered to produce the "interdepartmental documents," as well as a copy of the organizational information that is registered with the Secretary of State.

The plaintiffs raise the deficiency of the defendants' response to Interrogatory No. 22 for the first time in their reply brief in support of sanctions. Because the plaintiffs did not raise this argument initially, it is waived. *See Pugel v. Board of Trustees of the University of Illinois*, 378 F.3d 659, 669 (7th Cir.2004); *AT & T Wireless PCS, Inc. v. Town of Porter*, 203 F.Supp.2d 985, 989 (N.D.Ind.2002).

 Finally, the defendants argue that the plaintiffs' challenges to the compelled discovery responses must be denied because the plaintiffs failed to file a Local Rule 37.1(b) certification with their motions. Local Rule 37.1(b) states that "[w]ith respect to every

other motion concerning discovery, the motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party in an effort to resolve the matter without court action." The plaintiffs' motion to show cause indicates that the "plaintiff's [sic] attorneys and GCS' attorneys held a meeting after the November 18, 2004, production to discuss the above issues plaintiffs had with the amended defenses." (Pl. Motion to Show Cause at p. 2) The motion to deem certain facts admitted also indicates that the parties have engaged in ongoing discovery discussions. The plaintiffs later untimely filed a certification on January 3, 2005, following the defendants' criticism of this procedural failure.

While the plaintiffs did not comply precisely with the Local Rule, the plaintiffs' motions reflect an effort to confer with the defendants. Moreover, the court already has dealt with the merits of the motions. Therefore, the plaintiffs' lack of compliance is not fatal.

### Motion to Deem Admitted Certain Facts

In this motion, the plaintiffs seek a further discovery sanction against the defendants deeming numerosity admitted for purposes of class certification. The discovery sanctions chosen by the court must be such that "a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction." *Salgado v. General Motors Corp.*, 150 F.3d 735, 740 (7th Cir. 1998); *In re Golant*, 239 F.3d 931, 937 (7th Cir.2001). The sanctions directed against GCS throughout this Order are commensurate with the specific deficiencies in the defendants' discovery responses. The merits of the plaintiffs' motion for class certification need not be a subject of further sanction.

For the foregoing reasons, the Motion for Clarification of the Order of 11/03/04 filed by the defendants, GC Services, DLS Enterprises, and GC Financial Corporation, on December 10, 2004 is **GRANTED IN PART** and **DENIED IN PART**, the Motion for Rule to Show Cause filed by the plaintiffs, Paul and Ruby Lucas, on December 15, 2004 is **GRANTED IN PART** and **DENIED IN PART**, and the Motion to Deem Admitted Certain Facts Relating to Class Certification

filed by the plaintiffs on December 15, 2004 is **DENIED**.

The court hereby **MODIFIES** the second sanction in the court's November 3, 2004 Order to state:

> The defendants are deemed to admit that the photocopies of the letters sent to the plaintiffs, referenced as "Exhibits A–B" throughout the discovery, are similar in form to the letters sent by GCS.

The court **ORDERS** the following sanctions against the defendants:

1) the six "general objections," enumerated A–F, in the defendants' responses are **STRICKEN**;

2) the defendants may not present any witnesses in this case except Michael Ellis, Michael Sullivan, and Diana Derbus;

3) the defendants may not use any internal memoranda related to compliance procedures, beyond the "Standard Operating Procedure C–9," in the presentation of their case.

The court further **ORDERS** the defendants to produce the following information on or before February 14, 2005:

1) the title, job description, and last known addresses of Michael Ellis and Michael Sullivan. In the event the last known address of Diana Derbus is discovered, GCS **SHALL** notify the plaintiffs immediately;

2) the name or names of the Relizon representatives, if they exist, the defendants have or currently work with, as well as the company's mailing address and phone number;

3) the "interdepartmental documents" related to the organization of GCS, as well as a copy of the organizational information that is registered with the Secretary of State;

4) the technical specifications for the font weight on the letters sent to the plaintiffs, or the person or entity, if not employed by GCS, responsible for establishing these technical specifications;

5) full and complete responses to Document Requests No. 8–12, **WITHOUT** commentary on the number of times the plaintiffs' law firm has sued the defendants or on the merits of this case.

The court further **ORDERS** the defendants to produce the following information on or before February 25, 2005:

1) an audited balance sheet for each defendant;

2) an identification of each lawsuit in which the defendants have provided or produced financial statements or net worth information;

3) an identification of each instance in which the defendants have provided their net worth to any government agency;

4) financial statements for the last three years;

5) annual reports for the last three years;

6) semiannual and quarterly financial statements for the last three years;

7) credit applications for the last three years;

8) tax returns for the last three years.

The court further **ORDERS** each party to bear its own costs in the litigation of the motions before this court.

The defendants are **WARNED** that the defendants shall be subject to further sanctions in the event the plaintiffs discover:

1) manuals, memoranda, instructions or other documents setting forth GCS's policies, procedures, or practices related to the collection of debts or to form letters such as those sent to the plaintiffs, other than the "Standard Operating Procedure C–9"; or

2) a contract that GCS has with Relizon or another third party for the printing or mailing of form letters such as those sent to the plaintiffs.