2003 VT 24

## Paul F. Schmitt v. Richard Lalancette, P.E. and Home Inspection Consultants of Central Vermont, Inc.

[830 A.2d 16]

No. 01-453

Present: Amestoy, C.J., Dooley, Morse,[1] Johnson and Skoglund, JJ.

Opinion Filed March 21, 2003
Motion for Reargument Denied May 1, 2003

---

[1] Justice Morse sat in on oral argument but did not participate in this decision.

*Andrea L. Gallitano* of *Otterman and Allen, P.C.*, Barre, for Plaintiff-Appellant.

*Timothy L. Taylor* and *William H. Meub* of *Meub Associates, Inc.*, Rutland, for Defendants-Appellees.

¶ 1. **Johnson, J.** This appeal challenges a court order limiting discovery and independent investigation before trial. Appellant Paul Schmitt appeals from a jury verdict finding that appellee Richard Lalancette was not liable to Schmitt in connection with a house inspection that Lalancette performed for Schmitt. Schmitt claims Lalancette's inspection failed to identify serious structural flaws in the house and that Lalancette was liable for both breach of contract and violation of Vermont's Consumer Fraud Statute, 9 V.S.A. §§ 2451-2480g. During discovery, Schmitt requested the names of other customers referred to Lalancette by the realtor who brokered Schmitt's home purchase. The trial court not only denied Schmitt's discovery request, but issued a protective order preventing Schmitt from contacting former customers of Lalancette whose names Schmitt obtained through independent investigation.

¶ 2. Schmitt seeks a new trial on the grounds that (1) the protective order limiting discovery and precluding independent investigation imposed by the trial court was an abuse of discretion, and (2) the trial court improperly granted Lalancette's motion for directed verdict on Schmitt's consumer fraud claim. Because we agree with appellant that the trial court abused its discretion in issuing the protective order, we reverse and remand for a new trial. In light of our disposition, it is not necessary to reach Schmitt's claim under the Consumer Fraud Act.

¶ 3. In 1997, Schmitt was shown a 200-year-old home in East Corinth by Vermont realtor Ann Swanson, and decided to purchase the house. Concerned about the extent to which the property might be in need of expensive repairs, Schmitt made the closing contingent upon the outcome of a home inspection. He asked Swanson if she knew of any local home inspectors, and Swanson recommended Lalancette. Schmitt hired Lalancette to inspect the property. In his written report, Lalancette gave the home an overall rating of average, indicating that it was in need of only minor structural and mechanical repairs to some of its components. Schmitt purchased the home and hired a general contractor and architect to make the necessary repairs. The architect and general contractor both

identified serious structural defects in the property that had been glossed over in Lalancette's written report.

¶ 4. Schmitt spent almost $80,000 performing remedial work on his home. He contacted Lalancette and demanded that Lalancette reimburse these costs. Lalancette denied responsibility, and at that point, Schmitt filed suit seeking to recover the money he had to spend on repairs from Lalancette. His amended complaint demanded damages on two grounds: (1) breach of contract and (2) unfair or deceptive acts or practices in commerce in violation of Vermont's Consumer Fraud Statute, 9 V.S.A. §§ 2451-2480g.

¶ 5. During discovery, Schmitt sought to determine whether other home buyers had received inaccurate reports from Lalancette. His theory was that there had been collusion between Lalancette and the realtor, Ann Swanson. According to Schmitt's theory, Lalancette was improperly motivated not to issue reports that would prevent real estate closings in order to receive continued referrals from Swanson. Schmitt requested seventeen reports that Lalancette's firm had prepared in the course of home inspections performed for clients referred by Swanson. Schmitt asserted that the reports were relevant for two reasons. First, examining the reports and interviewing the homeowners would enable Schmitt to determine the accuracy of the reports, which would be relevant to a determination of Lalancette's competency in the performance of home inspections. Second, if the reports together with interviews of the former customers revealed a recurring pattern of underreporting serious problems with the houses that would be obvious to a trained eye, Schmitt asserted that he would have evidence consistent with his theory that Lalancette had an improper motive to prepare positive reports that would facilitate a sale. Schmitt stated that obtaining the reports without being able to contact the homeowners would be useless to his investigation because without interviewing the homeowners he would be unable to determine the accuracy of the reports, and it was the accuracy of the reports, not their comprehensiveness, that was at issue in his case.

¶ 6. Lalancette at first categorically refused to release the reports, and then offered to provide redacted reports, with the names and identifying information of the homeowners deleted. The offer was contingent upon Schmitt agreeing not to attempt to identify or speak to the homeowners of the properties in question. Schmitt refused to agree to this condition, and sought full disclosure of the reports and the names of the homeowners. Lalancette objected on the grounds that the reports requested were irrelevant to the subject matter of the dispute and beyond the scope of discovery. Furthermore, Lalancette asserted that he could not disclose

the reports because of a contractual confidentiality agreement with former clients, which would expose Lalancette to liability for breach of contract if he revealed their names to Schmitt. Schmitt then filed a motion to compel Lalancette to reveal the seventeen reports in question. Lalancette cross-filed a motion for a protective order prohibiting Schmitt from contacting any of Lalancette's former clients.

¶ 7. The trial court ordered Lalancette to release the reports, but only after redacting the names and addresses of Lalancette's former clients. To enforce its determination that the identities of the homeowners were not discoverable, the trial court issued a protective order that specifically forbid Schmitt or his agents from contacting Lalancette's clients. The order prohibited Schmitt from learning the identity of Lalancette's former clients through independent investigation or from contacting any of Lalancette's former clients whom he was able to identify from public information.

¶ 8. The order was subsequently amended to permit Schmitt to contact five of Lalancette's former clients who had independently sued Lalancette and had already been disclosed by Lalancette. The trial court prohibited Schmitt, consistent with its earlier order, from contacting a former client of Lalancette, Tyler Yandow, of whom Schmitt had learned from his own investigation of the public records of the Board of Professional Engineering. The case proceeded to trial on September 4, 2001. The jury, presented with only the breach of contract claim after the trial court issued a directed verdict on Schmitt's consumer fraud claim, returned a verdict for Lalancette. This appeal followed.

¶ 9. The question for review is whether the trial court abused its discretion under V.R.C.P. 26(c) in issuing a protective order preventing Schmitt or his agents from independently contacting such former clients as they were able to identify through their own investigations.[2] We apply a

---

[2] The trial court issued a single ruling denying Schmitt's motion to compel Lalancette to disclose the names of a certain subset of his clients in the home inspection business and granting Lalancette's motion for a protective order preventing Schmitt from contacting Lalancette's clients. The court's written order reads in relevant part:

The only cause of action in this case that any of the sought discovery could be relevant to is whether Defendants' inspection of Plaintiff's home improperly failed to identify a defect. On this record, neither Plaintiff's "motive" theory nor his "incompetence" theory support contacting the clients. Doing so would clearly cause a great deal of embarrassment to Defendants, potentially have a significant and unjustified negative impact on Defendants' business, and likely extend discovery into expensive and unnecessary areas far in excess of that justified by the possible value of this lawsuit. Plaintiff's suggestion that any kind of "pattern and practice" exists to demonstrate either "motive" or

deferential standard of review to trial court rulings on discovery, which are left to the sound discretion of the trial judge. See, e.g., *Castle v. Sherburne Corp.*, 141 Vt. 157, 164, 446 A.2d 350, 353 (1982) (discovery rulings are "necessarily entrusted to the trial court's broad discretion"); *Med. Ctr. Hosp. of Vt., Inc. v. City of Burlington*, 152 Vt. 611, 627, 566 A.2d 1352, 1360 (1989) (discovery rulings are within the trial court's discretion). As with other decisions involving the trial court's discretion, we will not disturb discovery rulings on appeal unless that discretion has been abused or withheld entirely. *Poplaski v. Lamphere*, 152 Vt. 251, 255, 565 A.2d 1326, 1329 (1989).

¶ 10. Rule 26(c) allows a trial court, upon a finding of good cause shown, to issue a protective order. V.R.C.P. 26(c). In contrast to 26(b)(1), which is addressed to methods of discovery, subsection (c) permits the court in its discretion to order that access to relevant information not be had, or that the discovery may be had only on specified terms and conditions, or that its dissemination be limited. V.R.C.P. 26(c). In other words, even though the information sought may be relevant and not privileged under 26(b)(1), the court may refuse to order a party to produce it. See *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984) ("[Broad discovery creates] an opportunity . . . for litigants to obtain — incidentally or purposefully — information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes."). Thus, protective orders allow courts to limit the broad discovery rights established under Rule 26(a) and (b) if such rights are being abused. See A. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 427, 447 (1991).

¶ 11. Schmitt argues that the protective order violated his constitutional rights to freedom of expression and association, but we

---

"incompetence" is speculative in the extreme, and could be leveraged in support of any type of discovery in any lawsuit.

On the basis of these findings, the court denied Schmitt's request to compel disclosure of the names from Lalancette, and further ordered that "neither Plaintiff nor his agents may contact Defendants' clients." Although the trial court does not specify the basis for its authority to issue these orders, the court was impliedly invoking Rule 26(c), under which a trial judge, upon good cause shown, may issue a protective order providing that discovery not be had. V.R.C.P. 26(c). Schmitt's brief on appeal discusses only the protective order prohibiting independent investigation, not the order denying his motion to compel discovery. As the above quotation shows, however, the trial court fails to distinguish its reasons for denying Schmitt's motion to compel discovery from its reasons for issuing a protective order. Thus, while only the part of the order prohibiting independent investigation is appealed, our discussion encompasses the discovery order in its totality.

follow our practice of refraining from deciding a constitutional question when it is not necessary for the disposition of a case. *State v. Goodrich,* 151 Vt. 367, 375, 564 A.2d 1346, 1351 (1989). We decide this case on the basis that the trial court, which relied on Rule 26(c), exceeded its authority under the rule.

■ ¶ 12.   The difficulty with the trial court's order under Rule 26(c) is that the rule is designed to apply solely to the discovery process itself. It protects the manner in which parties have to make disclosures, or protects them from having to make the disclosures at all, but there is nothing in Rule 26(c) that implies that courts have the authority to prevent a party to litigation from conducting its own private investigation to identify witnesses or obtain desired information, without relying upon formal discovery. Here, the names sought were merely former customers who may or may not have had the same experience with Lalancette as Schmitt. This is not a situation in which any of the customers were protected by attorney-client privilege. There is no allegation of intimidation or abuse of the customers. The discovery sought was entirely routine. In fact, Schmitt had learned of one witness, Tyler Yandow, from public records because Yandow had filed a professional conduct complaint against Lalancette, and yet the trial court prohibited Schmitt from contacting him. Under these circumstances, the trial court's protective order reached far beyond its power under Rule 26(c).[3]

¶ 13.   Although we have not found any case in which a trial court goes quite as far in the exercise of its purported authority under Rule 26(c) as the one before us, the United States Court of Appeals for the Second Circuit has held that during the pretrial period "[r]estrictions which may impede the development, presentation and determination of facts should be avoided wherever possible." *Int'l Bus. Mach. Corp. v. Edelstein,* 526 F.2d 37, 41 (2d Cir. 1975). In *International Business Machines,* IBM sought to interview persons appearing on a government witness list in a Sherman Act case brought by the United States. The trial judge ordered that all interviews of adverse witnesses had to take place either in the presence of opposing counsel or with a stenographer present. *Id.* In other words, the interviews had to be formally taken as depositions. IBM

---

[3] Protective orders might prove necessary where there is a risk that one party will abuse the discovery process, as alluded to above, but these are exceptional situations. The facts before us do not begin to suggest circumstances that could justify such extraordinary measures. We note that for the most part Rule 26(c) provides for restrictions on the rights of parties to disseminate information learned through discovery, not restrictions on the investigation process itself, but we express no opinion on the inherent authority of the trial court to control parties in situations presenting a true risk of discovery abuses.

brought a petition for extraordinary relief in the nature of a mandamus action. The Second Circuit held that restrictions on pretrial interviewing established by the trial judge exceeded his authority. "The[se restrictions] not only impair the constitutional right to effective assistance of counsel but are contrary to time-honored and decision-honored principles, namely, that counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private, without the presence or consent of opposing counsel and without a transcript being made." *Id.* at 42.

¶ 14. Although the language of Rule 26(c) allows a trial judge to make "any order which justice requires," this power may not be used in a way that infringes upon a plaintiff's substantive right to investigate relevant facts. The trial court, therefore, had no authority to prohibit Schmitt and his attorney from conducting their own investigation and from talking to any willing persons with information outside the discovery process. To the extent that the present dispute is reformulated as a true discovery dispute upon retrial of this matter, we consider whether the trial court had adequate justification, under Rule 26(c), to order that discovery not be had from Lalancette on the grounds stated by the trial court.

¶ 15. Rule 26(c) provides that, upon good cause shown, a judge may make an order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." The trial court's findings, although brief, relied on the embarrassment to defendants, the potential significant and unjustified negative impact on defendants' business, and the potential for extending discovery "into expensive and unnecessary areas far in excess of that justified by the possible value of this lawsuit." None of these reasons, in the context of this lawsuit, are sufficient to support an order denying otherwise relevant discovery to Schmitt under Rule 26(c).

¶ 16. Although we have not had occasion to discuss the meaning of "good cause," this is well-traveled ground under the federal rules. A party seeking a protective order to prevent injury to a business must present allegations of injury with some specificity. *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1114 (3d Cir. 1986). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.* at 1121; see also *Joy v. North,* 692 F.2d 880, 894 (2d Cir. 1982) (refusing to make protective order where proponent's only argument in its favor was the conclusory statement that disclosure of certain information would "injure the bank in the industry

and local community").[4] Protective orders are generally not available to protect businesses from embarrassment: "As embarrassment is usually thought of as a nonmonetizable harm to individuals, it may be especially difficult for a business enterprise, whose primary measure of well-being is presumably monetizable, to argue for a protective order on this ground; to succeed, a business will have to show with some specificity that the embarrassment resulting from dissemination of the information would cause a significant harm to its competitive and financial position." *Cipollone*, 785 F.2d at 1121 (internal citation omitted).

¶ 17. There are no facts alleged in this case that could amount to "good cause" for issuing a protective order. According to the trial court, Lalancette argued that allowing Schmitt to contact his former clients "would cause severe embarrassment." This broad allegation does not meet the requirement that a business allege a specific injury. See *id.*

¶ 18. Moreover, there was no unnecessary expense to Lalancette. Even Lalancette does not argue that complying with the requested discovery was too expensive. Rather, he argues that the evidence with respect to other customers' experiences will be inadmissible, or if admissible, that he may be put to the cost of opposing such evidence at trial, which will be expensive. On the issue of inadmissibility, Rule 26(b)(1) states that discovery cannot be denied on the ground that the information sought will be inadmissible as long as the discovery request is "reasonably calculated" to uncover admissible evidence. Moreover, Lalancette's argument about the costs of potentially having to present opposing evidence at trial is not a reason to deny Schmitt discovery to which he is otherwise entitled. In short, Lalancette did not allege, and the trial court did not find, any facts that would support the notion that Schmitt's request was so abusive or burdensome that a protective order was appropriate.

¶ 19. The only remaining question is whether the trial court's error in this discovery ruling meets the "substantial justice" test of V.R.C.P. 61 for requiring a new trial. The test requires us to consider whether

---

[4] We note that the good cause standard discussed herein applies to cases involving business losses, and that less specificity in pleading may be required to obtain a protective order where noneconomic interests of private individuals are at stake. See *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992) (deferring to the lower court's denial of a protective order but noting that plaintiff's argument that the discovery was sought mostly to gain an advantage in other litigation "in some circumstances might raise an inference of bad faith sufficient to support a protective order"); *Topo v. Dhir*, 210 F.R.D. 76, 78 (S.D.N.Y. 2002) (granting a protective order barring defendants from inquiring into plaintiff's immigration status without requiring pleading of a specific injury).

refusing to grant a new trial would be inconsistent with the substantial rights of the parties. See V.R.C.P. 61 ("[E]rror . . . in anything done or omitted by the court or by any of the parties is ground for granting a new trial [only if] refusal to take such action appears to the court inconsistent with substantial justice."); see also *Ordinetz v. Springfield Family Ctr., Inc.*, 142 Vt. 466, 470, 457 A.2d 282, 284 (1983) ("The 'substantial justice' test of V.R.C.P. 61 . . . requires examination of just how the court's ruling affected the rights of the plaintiffs, not merely procedurally, but in matters truly of substance."). The party who objects to the error must demonstrate that the error resulted in prejudice. *In re C.K.*, 164 Vt. 462, 468, 671 A.2d 1270, 1274 (1995) ("The burden is on the excepting party to demonstrate that the error resulted in prejudice."). We find that the test is satisfied and a new trial must be granted. Without having been able to contact the former clients, Schmitt has been unable to fully develop his case against Lalancette. We note that had Schmitt been allowed to contact the clients independently, and had the information turned out not to have helped Schmitt's case, then the trial court's error in denying discovery of the names of the former clients may well have proven harmless. Under the circumstances, however, we cannot know what Schmitt might have discovered had he been allowed to proceed with his investigation. Schmitt is entitled to a new trial.

*Reversed and remanded for a new trial, with discovery rights granted to appellant in accordance with this opinion.*

