2004 VT 113

**Susan C. SMITH, Administratrix of the Estate of Shaun M. Smith v. CENTRAL VERMONT HOSPITAL, INC., Central Vermont Medical Center, Inc., and Gary H. Goldberg, M.D.**

[868 A.2d 665]

No. 03-378

¶ 1. November 9, 2004. Plaintiff in this medical malpractice action appeals from a summary judgment of the Washington

Superior Court in favor of defendants Dr. Gary H.. Goldberg and Central Vermont Hospital. Plaintiff contends the court erred in striking an expert's affidavit and consequently finding a failure of proof on the element of causation. We agree, and therefore reverse and remand.

¶ 2. As found by the trial court, the facts may be briefly summarized. Plaintiff is the administratrix of the estate of her son, Shaun Smith, who died at the age of eighteen while being treated at defendant Central Vermont Hospital. Shaun was injured in a bicycle accident on July 1, 1999. Emergency medical personnel found him sitting on the side of the road, complaining of back and mouth pain. The EMS squad transported him to CVH, where he presented with facial trauma and appeared to be extremely combative. Dr. Goldberg, a specialist in emergency medicine, consulted with the emergency personnel and examined Shaun, but did not immediately call for the assistance of a surgeon or anesthesiologist. Shaun was placed in restraints and given anti-anxiety medication. One and a half hours later, he was sent to x-ray. Upon returning from x-ray, he appeared to have difficulty breathing. After several attempts, he was successfully intubated (a tube was inserted to help with his breathing). By then, however, he had aspirated enough blood into his lungs that he was unable to breathe despite the intubation. He died shortly thereafter.

¶ 3. Plaintiff filed a medical malpractice action against Dr. Goldberg and CVH. In February 2002, defendants moved for summary judgment, noting that plaintiff had failed to provide a timely disclosure of the expert opinions on which she planned to rely and therefore could not establish the elements of her claim. The court denied the motion, but established a new discovery schedule, requiring disclosure of all experts by June 6, 2002, after which plaintiff would be precluded from disclosing any experts.

Plaintiff disclosed as her expert Dr. Andrew Sumner, a specialist like Dr. Goldberg in emergency medicine. Dr. Sumner was deposed in September. In his deposition testimony, Dr. Sumner opined that — in view of Shaun's symptoms and medical history — Dr. Goldberg had been negligent in failing to call immediately for the assistance of a surgeon and anesthesiologist to consult on the need to intubate, but also indicated that the failure to intubate right away was negligent and a proximate cause of Shaun's death. At one point, Dr. Sumner acknowledged that if a surgeon and anesthesiologist had counseled against immediate intubation, "then I wouldn't be critical of [Dr. Goldberg]."

¶ 4. In December 2002, defendants filed a second motion for summary judgment. In support of the motion, they filed the affidavits of the two surgeons and the anesthesiologist who had actually been called to intubate Shaun after several hours at the hospital. All three physicians stated that — if they had been called earlier — they would not have recommended intubation. In her opposition to the motion, plaintiff adduced no affidavits or other expert testimony to directly refute the opinion of. the three specialists, but did note that Dr. Mason (the surgeon) had acknowledged in his deposition that he was not an expert in intubation, and that Dr. Sharp (the anesthesiologist) had admitted that it was difficult to assess what was required in the emergency room without having been there. Plaintiff also attached an affidavit from Dr. Sumner in which he stated that, in light of Shaun's agitation, medical history, and facial injuries, a reasonable standard of medical care required a rapid sequence intubation (RSI) when Shaun arrived at the hospital, and that Dr. Goldberg's failure to administer one was negligent and a proximate cause of Shaun's death.

¶ 5. Defendants moved to strike Dr. Sumner's affidavit as a "sham" under

V.R.C.P. 12(f), arguing that it set forth an "additional" theory of liability that had been "conjured to create a fictitious basis of liability" and that had not been disclosed in Dr. Sumner's deposition. Following a hearing, the court found that the affidavit set forth a "new" opinion that had not been timely disclosed, in violation of V.R.C.P. 26(e), which requires a party to supplement responses to discovery, and that the proper sanction was exclusion of the affidavit under V.R.C.P. 37(c)(1). Rule 37 provides, in pertinent part, that a party who fails without substantial justification to supplement responses as required by Rule 26(e) is not, unless such failure is harmless, permitted to use such evidence at trial or in a motion. The court found that the omission was not harmless in light of the additional time and expense required to redepose Dr. Sumner and the resulting "erosion" of confidence in the efficiency of the judicial system. Without the affidavit, the court concluded that plaintiff had no proof that the failure to immediately intubate was a proximate cause of Shaun's death. The court further noted that plaintiff had adduced no expert evidence directly refuting the opinions of the three specialists that they would not have recommended intubation if consulted earlier. Accordingly, the court concluded that plaintiff had failed to make a showing sufficient to support a claim of liability, and entered judgment in favor of defendants. This appeal followed.

¶ 6. We note initially that plaintiff's pro se brief does not expressly challenge the trial court's decision to exclude Dr. Sumner's affidavit. Plaintiff does, however, claim that Dr. Sumner's deposition testimony — fairly read — raised the same argument in abbreviated form that was contained in the affidavit. Accordingly, if plaintiff is correct, the trial court's rationale for exclusion — that the affidavit raised a new, untimely theory of liability — would be untenable.

¶ 7. Upon careful review of the record evidence, we conclude that plaintiff is correct. Plaintiff's expert-witness disclosure statement, submitted on June 6, 2002, indicated that Dr. Sumner was of the opinion that defendants had been negligent in failing to arrange for an

> immediate consultation with a general surgeon to assist in the initial assessment and stabilization; consultation with an anesthesiologist *to endotracheally intubate* such patient and paralyze him to facilitate rapid completion of the head CT and other radiographic studies; and consultation with a neurosurgeon if there was one on the medical staff.

> Had this been done in an expeditious manner, Shaun Smith would have received early airway management and been diagnosed with a severe head injury.

(Emphasis added.)

¶ 8. Consistent with the expert disclosure, Dr. Sumner testified at his deposition that Dr. Goldberg should have called for the assistance of a surgeon and anesthesiologist, and also stated that a special intubation procedure, known as a rapid sequence intubation or RSI, was an immediate necessity. Dr. Sumner testified to this effect twice. His initial statement was as follows: "So what I'm saying the standard is, is you — here's this kid, he hits a door, he's wild, he's agitated, he's got a head injury, you call anesthesia in, surgery, *you intubate this kid then and there.*" (Emphasis added.) A subsequent statement was to the same effect: "Well, that's the gross idea where I'm going, is what I say the standard is. He's got a moderate head injury, *he should have had rapid sequence intubation.*" (Emphasis added.)

¶ 9. As the trial court correctly noted, Dr. Sumner subsequently stated in the deposition that Dr. Goldberg would not have been negligent if a surgeon and anesthesiologist had been consulted at the outset and had advised against immediate intubation. As the trial court also correctly observed, this subsequent statement appears to contradict Dr. Sumner's earlier expressed opinion that the circumstances called for an immediate intubation procedure, as well as his subsequent affidavit reaffirming this opinion. However, the trial court's conclusion that Dr. Sumner had actually "abandoned" the initial theory of liability — premised on the need for an immediate intubation — is not at all clear from the record. Indeed, in light of Dr. Sumner's subsequent affidavit, it appears to be more likely that he abandoned the theory of liability premised on the failure to consult with other specialists.

¶ 10. Whether the two theories of liability are inconsistent is a different question, however, from whether Dr. Sumner's affidavit sets forth a virtually new theory of liability. In this regard, the record evidence does not, in our view, support the trial court's conclusion that Dr. Sumner's affidavit stated a new and untimely theory of liability that had not been stated at the deposition or disclosed in a timely supplemental response under V.R.C.P. 26(e). Rule 26(e) imposes a continuing duty upon a party "to supplement or correct" previously disclosed discovery responses "to include information thereafter acquired . . . if the party learns that the [earlier] response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Although Dr. Sumner's affidavit may have emphasized one previously stated theory of liability over another, it did not contain newly acquired information or state a new theory

that had not previously been disclosed at the deposition. Accordingly, we are persuaded that the affidavit contained no genuinely new material within the meaning of Rule 26(e).

¶ 11. Even if the affidavit's emphasis on one theory over another could be construed as falling within the scope of the rule, however, we would have difficulty upholding the court's sanction as reasonably commensurate with the purported violation and within the court's otherwise broad discretion. See *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (court's ruling on Rule 26 violation is entrusted to broad discretion of trial court); *Bigelow v. Bigelow*, 171 Vt. 100, 106, 759 A.2d 67, 71 (2000) (sanctions imposed under Rule 26 are reviewed under abuse of discretion standard); see also *Greene v. Bell*, 171 Vt. 280, 283, 762 A.2d 865, 869 (2000) (trial court has inherent authority to enforce discovery requirements of V.R.C.P. 26 and its imposition of discovery sanctions will not be disturbed on appeal absent abuse of discretion). Although we have not had occasion to closely explore the factors underlying a court's response to a Rule 26(e) violation, federal decisions interpreting and applying the parallel federal rule of procedure have identified several criteria to guide the court's discretion, including: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Caterpillar, Inc.*, 324 F.3d at 857; see also *Outley v. City of New York*, 837 F.2d 587, 590 (2d Cir. 1988) (in determining sanction for violation of Fed. R. Civ. P. 26(e), court should consider the importance of the testimony to the case, the prejudice to the party inconvenienced, the ability of the other party to formulate a response, and the willfulness of the violation).

¶ 12. Applying these criteria here, we note that defendants were well aware of the theory of liability set forth in Dr. Sumner's affidavit, the theory having been previously stated in plaintiff's expert disclosure form and in Dr. Sumner's deposition. Indeed, it is important to recall that the trial court explicitly found that Dr. Sumner had stated several theories of liability during his initial deposition, one being — in the trial court's words — that Dr. Goldberg should have intubated Shaun "then and there" and that "he deviated from the standard of care by failing to do it." Accordingly, even if we agreed with the court's finding that Dr. Sumner's subsequent responses implied that he had "abandoned" this theory, there is no question that defendants were fully informed of, and amply prepared to counter, Dr. Sumner's initial theory of causation. Any doubts in this regard are removed by defendants' rapid and ultimately successful response to Dr. Sumner's subsequently filed affidavit.

¶ 13. We have repeatedly observed that the purpose of liberal discovery rules is "the prevention of surprise to one's opponents," and have not hesitated to affirm the ultimate discovery sanction of exclusion when to do otherwise would frustrate this objective. *White Current Corp. v. Vt. Elec. Coop.*, 158 Vt. 216, 223, 609 A.2d 222, 226 (1992) (affirming exclusion of experts' testimony where their identities were not disclosed in supplemental answers until three and six days prior to trial); see also *Greene*, 171 Vt. at 283-84, 762 A.2d at 869 (affirming court's exclusion of expert testimony not disclosed prior to trial during expert's deposition). Here, by way of contrast, the record reveals no prejudice or unfair surprise to defendants through the theory set forth in Dr. Sumner's affidavit.

¶ 14. Furthermore, as noted, defendants submitted three supplemental affidavits by their own experts that directly rebutted Dr. Sumner's affidavit. Accordingly, there is no basis to conclude that defendants were unable to effectively respond to the new affidavit. Additionally, the trial court was fully empowered to require that Dr. Sumner submit to additional discovery, at plaintiff's expense if the court deemed fit, to "cure" any possible prejudice to defendants. Nothing in the record suggests that the additional time entailed would have disrupted any trial schedule, nor is there any record evidence of bad faith or of a willful nondisclosure on plaintiff's part.[1]

¶ 15. While we recognize fully the importance of affording the trial courts ample leeway to control their dockets through management of the discovery process, we also believe that courts must consider the actual consequences that may arise from perceived discovery violations and consider less drastic responses to the exclusion sanction in the absence of any bad faith, prejudice to the parties, or unwarranted delay in the trial process. See *Outley*, 837 F.2d at 591 (court should consider "actual difficulties" that discovery violation causes and consider "less drastic responses"). Here, we discern no sound or reasonable basis, under any of the recognized criteria, for the court's decision to strike the affidavit. We thus conclude that the court erred in excluding Dr. Sumner's affidavit as a sanction for the purported violation of V.R.C.P. 26(e). Because the court's decision to grant summary judgment was premised solely on its conclusion that, absent the affidavit, plaintiff had failed to state a viable theory of liability, we conclude that the judgment must be re-

---

[1] Defendants claimed that the affidavit was a "sham" fabricated to create a new theory of liability, but the trial court did not address the issue, and our review of the record reveals no evidence to support the claim.

versed. Questions as to whether Dr. Sumner stated irreconcilable theories of liability, or abandoned one theory in favor of another, may be addressed through additional discovery and at trial. See, e.g., *Thompson v. Ezor*, 536 S.E.2d 749, 753 (Ga. 2000) (fact that expert witness's deposition and affidavit contained contradictory statements was not cause for excluding his opinions, but "[t]o the contrary, such contradictions go solely to the expert's credibility, and are to be assessed by the jury when weighing the expert's testimony."); *Souza v. Fred Carries Contracts, Inc.*, 955 P.2d 3, 10 (Ariz. Ct. App. 1997) (fact that expert affidavit contained "internal inconsistencies does not render it fatally deficient as a matter of law. In our view, any shortcomings in [expert's] opinions affect their weight but not their admissibility.").

*Reversed and remanded.*

¶ 16. **Reiber, J.,** dissenting. After carefully reviewing the facts in the record, I cannot agree that the trial court abused its broad discretion by excluding plaintiff's untimely affidavit in this close case.

¶ 17. Although plaintiff has only appealed from the entry of summary judgment, the majority concludes that the superior court abused its discretion by excluding an untimely affidavit containing new discovery material. The Court reaches this conclusion on either of two alternative grounds. First, it assigns error to the trial court's finding that Dr. Sumner's later affidavit contained new and untimely discovery material. Second, assuming arguendo that the affidavit did contain new material, the majority concludes that the court abused its discretion by excluding the material as Rule 37 suggests. V.R.C.P. 37(c)(1). The appropriate standard of review requires us to defer to the trial court's judgment in close cases such as this, see *Schmitt v. Lalancette*, 2003 VT 24, ¶ 9, 175 Vt. 284,

830 A.2d 16, and I cannot agree that the court acted beyond its discretion here.

¶ 18. The majority first disagrees with the superior court's finding that Dr. Sumner's affidavit contains new discovery material. Although that determination involved factual findings, which we generally review for clear error, e.g., *Hoover v. Hoover*, 171 Vt. 256, 263, 764 A.2d 1192, 1197 (2000); V.R.C.P. 52(a)(2),[2] the majority has not given the trial court any deference on this question. Even if the court's determination on this issue is not an independent factual finding to be upheld unless clearly erroneous, we have nonetheless traditionally applied a "deferential standard of review to trial court rulings on discovery, which are left to the sound discretion of the trial judge." *Schmitt*, 2003 VT 24, ¶ 9. As the Court's opinion demonstrates, the question of whether the affidavit contained new material is a close one. The determination turns on the phrasing, nuance, and ultimately subjective interpretation, of ambiguous language. In such a case, I believe we must uphold the trial court's judgment unless it is clearly erroneous or an abuse of discretion.[3] Neither circumstance exists here.

---

[2] For many years there was a dispute among the federal courts over the appropriate standard of review when a trial court makes findings based on documentary evidence, but the 1985 amendment to the federal rule made it clear that the clearly erroneous standard applies to findings made on both testimonial and nontestimonial evidence. 9A C. Wright & A. Miller, Federal Practice and Procedure § 2587, at 585 (2d ed. 1995). The Reporter's Notes to the Vermont rule indicate that this has always been the law in Vermont. Reporter's Notes, V.R.C.P. 52.

[3] The majority appears to treat the trial court's decision on this issue as though it were part of its later ruling on the motion

¶ 19. The opinion goes on to suggest that, even if the affidavit was new and untimely, the trial court abused its discretion by excluding it. Here, at least, the majority recognizes that the trial court has broad discretion to impose discovery sanctions, *Bigelow v. Bigelow*, 171 Vt. 100, 106, 759 A.2d 67, 71 (2000), but goes on to conclude that the court abused that discretion by imposing the very sanction Rule 37 suggests. Rule 37(c)(1) states, in pertinent part:

> A party that without substantial justification fails to supplement responses as required by Rule 26(e) is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may

---

for summary judgment. In actuality, the court took three separate actions here: (1) it found that the affidavit contained new material; (2) it excluded the new material pursuant to Rule 37; and (3) it then examined the remaining evidence in the record and granted summary judgment for the defendants. The first two actions are plainly part of the court's ruling on a discovery issue, the resolution of which had a subsequent impact on, but was not part of, the summary judgment ruling. To separate these actions conceptually, we might easily imagine a case in which the exclusion of untimely discovery material did *not* result in a motion for — much less a grant of — summary judgment. While we review the grant of summary judgment de novo, we traditionally grant the trial courts broad discretion to control the discovery process, and we have not permitted parties to relitigate discovery rulings de novo on appeal.

impose other appropriate sanctions.

Thus, the rule *automatically* excludes undisclosed discovery material unless the court affirmatively finds the failure to disclose was harmless. The majority relies on an analogous federal decision, *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003), in apparently concluding that the court's failure to make such an affirmative finding amounts to an abuse of discretion.

¶ 20. In *David*, the Seventh Circuit reviewed a case in which the trial court had chosen *not* to exclude expert testimony after concluding that the plaintiff's failure to disclose was harmless. The court began its discussion of discovery sanctions by stating that Rule 37 exclusion "'is *automatic and mandatory* unless the sanctioned party can show that its violation . . . was either justified or harmless.'" 324 F.3d at 857 (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)) (emphasis added). It went on to observe that the determination of whether a violation is harmless is "'entrusted to the broad discretion of the [trial] court.'" *Id.* (quoting *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996)). As the Court observes, the Seventh Circuit outlined four factors that "should guide the [trial] court's discretion," but that court then *upheld* the trial court's determination. *Id.* Here, again, the majority would *reverse* the superior court for *not* departing from the default sanction Rule 37 proscribes.

¶ 21. Moreover, in addressing the *David* factors, the Court narrowly construes the meaning of "prejudice and surprise" and "bad faith," and apparently concludes that plaintiff's discovery violation was "harmless." In a circumstance like this, however, where plaintiff's entire case hinges upon the introduction of untimely discovery material, it is dif-

ficult to understand how the violation does not harm or prejudice the opposing party. Certainly, in such a case it is within the trial court's broad discretion to reach a contrary conclusion. Further, as the majority concedes, this plaintiff had already failed to meet previous discovery deadlines, and it was within the court's discretion to view this final violation as evidence of bad faith.

¶ 22. Because I cannot agree that exclusion of the untimely affidavit amounts to an abuse of discretion, I respectfully dissent.

Motion for reargument denied January 20, 2005.

Note: Chief Justice Amestoy sat for oral argument but did not participate in this decision.