STATE OF VERMONT

ENVIRONMENTAL COURT

| | |
|---|---|
| In re: Entergy Nuclear/ Vermont Yankee | } |
| Thermal Discharge permit amendment | } Docket No. 89-4-06 Vtec |
| (Appeal of Connecticut River Watershed Council, | } |
| Trout Unlimited (Deerfield/Millers 349 Ch.), | } |
| and Citizens Awareness Network) | } |
| (Appeal of New England Coalition | } |
| on Nuclear Pollution) | } |
| (Cross-Appeal of Entergy Nuclear | } |
| Vermont Yankee, LLC) | } |
| | } |

<u>Decision and Order on Pending Motions other than Motion for Renewed Stay</u>

Appellants Connecticut River Watershed Council, Trout Unlimited (Deerfield/Millers 349 Chapter), Citizens Awareness Network (Massachusetts Chapter) and New England Coalition on Nuclear Pollution, and Cross-Appellant Entergy Nuclear Vermont Yankee, LLC, appealed from a decision of the Vermont Agency of Natural Resources, approving an amendment of a thermal discharge permit issued to Entergy Nuclear Vermont Yankee, LLC.

Appellants Connecticut River Watershed Council (CRWC), Trout Unlimited, and Citizens Awareness Network (CAN)[1] are represented by Patrick A. Parenteau, Esq., David K. Mears, Esq., and Justin E. Kolber, Esq.; Appellant New England Coalition on Nuclear Pollution (NECNP) is represented by Evan J. Mulholland, Esq.; Cross-Appellant-Applicant Entergy Nuclear Vermont Yankee, LLC (Entergy Nuclear) is represented by Elise N. Zoli, Esq., Peter D. Van Oot, Esq., Sarah Heaton Concannon, Esq. and U. Gwyn Williams, Esq.;

---

[1] These three Appellants may be referred to as "the CRWC Appellants."

1

the Vermont Agency of Natural Resources is represented by Catherine Gjessing, Esq. and Warren T. Coleman, Esq.; and the Water Resources Panel of the Natural Resources Board is represented by John H. Hasen, Esq.[2]

Motion for Court-Appointed Expert

Entergy has filed a motion requesting that the Court appoint a neutral expert pursuant to Rule 706 of the Vermont Rules of Evidence.[3] Rule 706(a) provides, in relevant part, that "[t]he court, on motion of any party or its own motion, may enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witness agreed upon by the parties, and may appoint expert witnesses of its own selection." Rule 706 has not been widely used by Vermont courts, and thus far, its use appears only in the context of child custody determinations. Bonanno v. Bonanno, 148 Vt. 248, 249 (1987); see Vt. R. Evid. 706 Reporter's Notes (stating that Vermont courts "on occasion" appoint experts pursuant to Rule 706).

Federal Rule of Evidence 706, upon which Vermont Rule 706 is based, has been the subject of scholarly debate. Some have argued that Federal Rule 706 assists courts in wading through complex, technical or scientific evidence, 29 Wright & Gold, Federal Practice and Procedure Evidence § 6305, while others question the role of such experts (especially in a jury trial context). Id. § 6302. Yet others suggest that use of a court-

---

[2] The Windham Regional Commission appeared through James Matteau and John Bennett but has since withdrawn as a party.

[3] Although both concepts are held to be encompassed by Rule 706, Entergy's motion requests the appointment of a scientific expert, not a technical advisor. See Reilly v. United States, 863 F.2d 149, 154-56 (1st Cir. 1988) (discussing difference between expert witnesses and technical advisors under Federal Rule 706).

appointed expert may increase the burden on the court, increase the costs to the parties, and interfere with "adversarial control over the presentation of evidence." Id. § 6304.

We have examined the circumstances under which trial courts have appointed experts, such as when there are gaps in the parties' expert's testimony, Aiello v. Town of Brookhaven, 136 F. Supp. 2d 81, 94 (E.D.N.Y. 2001), or when complex economic analyses were at issue, North Carolina Fisheries Ass'n, Inc. v. Daley, 27 F. Supp. 2d 650, 652 (E.D. Va. 1998); and the circumstances under which trial courts have declined to appoint an expert. See, e.g., Mallard Bay Drilling, Inc. v. Bessard, 145 F.R.D. 405, 406 (W.D. La. 1993) (declining to appoint because "the mere fact that the parties' retained experts have expressed divergent opinions does not necessarily warrant that the Court appoint an expert. . . ."); Gold v. Dalkon Shield Claimants Trust, Civ. No. B-82-383, *1 (D. Conn. 1998) (unpublished), available on Westlaw at 1998 WL 351466 (declining to appoint, balancing "respect for the adversarial process" against the degree to which the evidence is "so highly technical that the Court requires independent expert guidance."); Caliendo v. Trump Taj Mahal Assocs., Civ. No. 03-5145, *1 (D. N.J. 2007) (unpublished), available on Westlaw at 2007 WL 1038854 (no "unusual or compelling circumstances" requiring a court-appointed expert); In re Sawyer, 829 N.Y.S. 2d 865, 869–70 (N.Y. Sup. Ct. 2006) (discussing difficulty of determining whether a court-selected expert is any "better or more impartial than the experts selected by the parties"); Willoya v. State Dep't of Corrections, 53 P.3d 1115, 1122 (Alaska 2002) (affirming trial court's denial of motion to appoint expert because case was not complex).

At this point in the present appeal, the parties have not persuaded the Court that the expert evidence and analysis cannot be adequately presented to the Court by the parties' own experts, with full and fair opportunity for cross-examination and rebuttal, especially given the criteria for assignment of judges to environmental court.  4 V.S.A. §21a(a) & (b). Moreover, at the conclusion of the parties' examination of any witness, the Court will have

3

the opportunity, if necessary, to ask additional questions pursuant to V.R.E. 614(b).

Therefore, Entergy's motion for appointment of a neutral expert pursuant to V.R.E. 706 is DENIED.


Motion to Alter, Reconsider or Clarify January 9, 2007 Decision and Order

The ANR has filed a motion to reconsider or clarify the Court's January 9, 2007 Decision and Order with respect to the Court's ruling on the ANR's motion to dismiss Question 7 of the CRWC Appellants' Statement of Questions. Entergy has filed a motion to clarify the Court's ruling on the applicability of the Vermont Water Quality Standards (VWQS) to the application on appeal.

As noted in, e.g., In re: Boutin PRD Amendment, Docket No. 93-4-06 Vtec (Vt. Envtl. Ct., May 18, 2007), "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." (Citations omitted.) A motion for reconsideration of a summary judgment or other motion decision should not be used "to rehash arguments previously raised [to] and rejected by the court." See Duane v. Spaulding and Rogers Mfg. Inc., 1994 WL 494651, *2 (N.D.N.Y. 1994). As the court noted in that case, it may be "readily apparent from [a] reconsideration motion . . . that the [moving parties] and the court disagree," nevertheless, "that disagreement [may] not, in the court's view, rise to the level of a 'clear error of law' or 'manifest injustice.'" Id.

In the present appeal, this Court has reexamined its January 9, 2007 decision in light of the requests for reconsideration, and declines to make any changes in that decision.

The ANR argues that the Court should reconsider its decision not to dismiss the CRWC Appellants' Question 7, which relates to the mixing zone requirements in VWQS Section 2-04 and the water quality criteria for temperature in VWQS Section 3-01(B)(1). The ANR argues that, because it made a determination that a mixing zone of 200 feet is insufficient in relation to the July 11, 2001 discharge permit and because the agency's

decision on this issue cannot be revisited in connection with the application for a permit amendment, the CRWC Appellants' Question 7 is beyond the scope of this appeal.

The ANR is correct that the Court will not revisit the ANR's decision to issue the July 11, 2001 discharge permit in determining whether to grant this amendment to that discharge permit, but the Court must consider any relevant provisions of the VWQS as they relate to the evidence presented on the effect of a one degree increase in thermal discharge. It is this Court's statutory obligation, under the de novo standard of review governing this appeal, to apply the "substantive standards that were applicable before the tribunal appealed from." 10 V.S.A. § 8504(h). If the ANR were required to consider whether the proposed thermal discharge amendment would violate any relevant standard established by either the Vermont Water Pollution Control Act, 10 V.S.A. § 1250 et seq., or the VWQS, the Court must consider the evidence in relation to the same standards. This is not a ruling as to which particular standards may be applicable, it is merely a ruling that, in this de novo proceeding, this Court must apply whatever standards were applicable before the ANR.

Entergy has also moved to 'clarify' or alter[4] the Court's January 9 Decision and Order regarding the applicability of the VWQS in their entirety. Entergy's argument is focused on the federal permitting system governed by the Clean Water Act. See 33 U.S.C.

---

[4] Entergy's motion to "clarify" the January 9 Decision and Order is less of a request for clarification than it is a request to alter or reconsider that decision to reflect Entergy's arguments against the statutory de novo standard of review. The Court recognizes that Entergy disagrees with the Court's interpretation of the statutory language of 10 V.S.A. §8504(f), but notes that Entergy has already preserved this argument for any appeal. The Court has clearly stated the standard it will be applying in the upcoming trial. Unless that interpretation is changed by the Vermont Supreme Court in an interlocutory appeal of this issue, the Court's reading of the plain language of the statute will apply; any further argument about it may be made to the Vermont Supreme Court in any later appeal, or to the Legislature in seeking any change in that statute.

5

§ 1342.  The plain language of the federal statute, quoted in full in this Court's January 9 Decision and Order, states that nothing in the federal act shall "preclude or deny the right of any State" to adopt or enforce "any requirement respecting control or abatement of pollution," unless the State requirement is "less stringent" than the federal limitation, in which case, the more stringent federal requirements apply.  33 U.S.C. § 1370.  Thus, as the January 9 Decision and Order determined, to the extent the VWQS are relevant and are not less stringent than the provisions of the federal Clean Water Act,[5] they apply to this appeal and are not preempted by federal law.  See Indiana Dep't of Envtl. Mgmt. v. Twin Eagle LLC, 798 N.E. 2d 839, 842 (Ind. 2003) ("It is clear the federal law does not prevent a state from having a broader or more stringent regulatory program than the [Clean Water Act] imposes.").

In its motion, Entergy discusses at length the meaning of the variance language set forth at §316(a) of the federal Clean Water Act, 33 U.S.C. § 1326(a), and the purpose of such variances in general, in support of its argument that the federal §316(a) governs, yet does not preempt, the provisions of the VWQS related to thermal effluent.  Section 316(a) authorizes the Secretary of the Interior, or a state agency if it has been granted the authority to operate its permitting program as an NPDES program within the state, to impose an alternate effluent limitation on a facility when the operator can demonstrate to the satisfaction of the decisionmaker that the otherwise-applicable effluent limitations are "more stringent than necessary" to assure the protection of shellfish, fish, and wildlife.  33 U.S.C. § 1326(a).  If it is the VWQS that are the otherwise-applicable substantive thermal

_____

[5]  To the extent that Entergy seeks the Court's opinion in advance of trial as to whether all of the VWQS are more stringent or less stringent than the federal Clean Water Act, it seeks an impermissible advisory opinion; this Court can only properly make such a determination as those standards may be applied to the facts of this particular application, if at all.

effluent standards, the fact that this application seeks a §316(a) variance from them does not render them inapplicable.

Therefore, both Entergy's motion to clarify and the ANR's motion for reconsideration are DENIED.

Motions for Protective Order

The CRWC Appellants and NECNP have each moved for a protective order pursuant to V.R.E.C.P. 2(c) and V.R.C.P. 26(c). V.R.E.C.P. 2(c) provides that the Court may limit discovery to "that which is necessary for a full and fair determination of the proceeding." V.R.C.P. 26(c) allows a party, upon a showing of good cause, to seek an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

The CRWC Appellants and NECNP argue, in summary: (1) that Entergy's discovery requests served on January 31, 2007 ("the discovery requests") were served in violation of the Court's June 23, 2006 and October 3, 2006 scheduling orders, (2) that the discovery requests are overbroad in light of the limited scope of the hearing on the motions to renew the stay, and (3) that the discovery requests seek information related to the previous motions for a stay, which were resolved in the September 1, 2006 decision and order.

While it is true that discovery was suspended pursuant to the October 3 scheduling order, the effect of the Court's January 9, 2007 Decision and Order was to reinstate the discovery schedule per the terms of the October 3 scheduling order. The January 9 Decision and Order resolved all pending motions regarding party status, motions to dismiss, and motions to clarify. Therefore, Entergy's discovery requests did not violate the October 3 scheduling order.

With respect to the issue of the breadth of the discovery requests, the CRWC Appellants' and NECNP's arguments have been rendered moot by the change in schedule

7

that accelerated the trial on the merits to begin June 26, 2007. The parties have been as a matter of course entitled to seek discovery directed at matters within the scope of the trial on the merits of the amendment application.

With respect to the CRWC Appellants and NECNP's arguments that Entergy's discovery requests seek information that inappropriately relates to the original motions for a stay, under V.R.C.P. 26(c), it is the party seeking the protective order that bears the burden of demonstrating how the discovery is unduly burdensome, expensive, annoying, or embarrassing. With respect to this argument, the standard of V.R.C.P. 26(c) has not been met with any specificity regarding any specific discovery requests related to the original stay; although the stay request has been ruled on, such discovery may well be appropriate respecting preparation for the trial on the merits.

The CRWC Appellants argue in addition that certain of the discovery requests are overly broad even for the scope of the trial on the merits. Grouped into categories, the CRWC Appellants object to requests seeking the following information: (1) Appellants' membership lists; (2) Appellants' financial assets; (3) Appellants' organizational structure and mission; (4) documents supporting the CRWC Appellants' expert witness opinions offered in support of the original stay order; and (5) information on "every issue presented in the case to date – even those . . . which the Court has not yet determined are part of the case."

As set forth in V.R.C.P. 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of any other party. . . ." Discovery requests are not objectionable because the information sought will be inadmissible at trial, if the information "appears reasonably calculated to lead to the discovery of admissible evidence." V.R.C.P. 26(b)(1). As of the present procedural posture of this appeal, the information in categories 1 and 3, as well as the information from category 2 related to the

8

Appellants' financial assets, sources of funding, and bases for their nonprofit status, appears to relate only to party status. Therefore that discovery appears to be moot as the motions relating to party status were ruled on in the January 9 Decision and Order. With respect to category 4, the CRWC Appellants have not specified how discovery should be limited. Even if the discovery related to evidence or opinions expressed in connection with the original request for stay, it can reasonably be expected to relate to the issues on the merits of the application as well.

With respect to category 5, it is not possible to determine which specific discovery requests are contested. All outstanding motions related to the scope of the appeal have been resolved. The Court cannot grant a motion for a protective order barring discovery of "every issue presented in the case to date" for two reasons. First, the necessary specificity is simply lacking from such a request. Schmitt v. Lalancette, 2003 VT 24, ¶16, 175 Vt. 284, 290 (quoting Cipollone v. Liggett Grp., Inc., 785 F.2d 1108, 1114 (3rd Cir. 1986) ("A party seeking a protective order . . . must present allegations of injury with some specificity.")). Further, with respect to the procedural posture of this appeal, many of the factual issues presented in the motion to stay will be again presented on the merits of the application, and discovery with respect to those issues should not be precluded.

For the foregoing reasons, both Motions for Protective Orders are DENIED.


Motion to Consolidate

The CRWC Appellants and NECNP moved to consolidate this matter with the prospective appeal from the ANR's decision at the conclusion of its current proceedings on Entergy's renewal NPDES permit. While such consolidation might have made sense if the ANR's renewal permit decision had been imminent, as the thermal discharge issue will be only one among several issues on which evidence will have to be taken in that proceeding, at the conference held on January 22, 2007 the ANR represented that a decision

9

on the renewal permit proceedings would not be likely before January of 2008. Accordingly, at that and successive conferences the Court has proceeded to schedule the amendment proceeding for its trial on the merits, as consolidation would not "promote expeditious and fair proceedings," nor would it "avoid unnecessary delay." V.R.E.C.P. 2(b). To the extent that an explicit ruling is necessary to keep the docket entries clear, the Motion to Consolidate is DENIED.

Done at Berlin, Vermont, this 6th day of June, 2007.

_____
Merideth Wright
Environmental Judge